# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-3881

IN RE:

BARRY B. KREISLER and MARSHA D. ERENBERG,

*Debtors.*

APPEAL OF:

GARLIN MORTGAGE CORPORATION

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 6593—**Robert W. Gettleman,** *Judge.*

ARGUED NOVEMBER 5, 2007—DECIDED OCTOBER 20, 2008

Before POSNER, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* The bankruptcy rules authorize claims trading, a practice in which a creditor sells its claim against a bankrupt debtor to a third party in exchange for cash or something else of value. *See* FED. R. BANKR. P. 3001(e). Claims trading allows creditors to opt out of the bankruptcy system, trading an uncertain future payment for an immediate one, so long as they can find a purchaser. The purchaser essentially becomes an

investor in the bankruptcy estate, betting that the future payout will eventually be more than the claim's purchase price.

This case involves claims trading with a twist: two bankrupt individuals in Chapter 7 proceedings under joint administration in the bankruptcy court formed a corporation to purchase a secured claim against their own estates. Claims trading by debtors in their own estates is unusual; debtors in bankruptcy presumably lack assets outside their estates that might be used to purchase a claim. The bankruptcy court viewed the debtors' actions as misconduct and invoked the doctrine of equitable subordination. The result was that their corporation's claim was given last priority, meaning it could be paid only after the claims of every unsecured creditor. Not surprisingly, there wasn't enough money to pay all the unsecured claims, so the corporation ended up with nothing. An appeal was taken to the district court, which affirmed, and the corporation appealed to this court.

We reverse. Equitable subordination is generally appropriate only if a creditor is guilty of misconduct that causes injury to the interests of other creditors. The debtors' formation of a corporation to purchase a secured claim against their own estates may have amounted to misconduct, but it did not harm the other creditors, who were in the same position whether the original creditor or the debtors' corporation owned the secured claim.

## I. Background

Real-estate developers Barry Kreisler and Marsha Erenberg each owned an interest in two properties located on Western Avenue in Chicago, both of which were fully encumbered by several mortgages, including a junior mortgage held by the Community Bank of Ravenswood. In 2002 Kreisler and Erenberg filed for bankruptcy, and a bankruptcy trustee was appointed to jointly administer their estates. Community Bank filed secured claims for nearly $900,000 in each case.

The bankruptcy proceedings threatened to drag out, and the bank decided that it wanted out of the case. According to the trustee, Community Bank approached her about making a deal and proposed reducing its claim against one of the properties to $15,000 in return for the trustee's help obtaining court approval to foreclose on the other property. The trustee and the bank never reached an agreement, however, and in the meantime Kreisler and Erenberg decided to try to purchase the claim for themselves. They formed Garlin Mortgage Corporation for that purpose. Kreisler, an attorney, negotiated on Garlin's behalf to purchase Community Bank's claim for $16,500 and financed the transaction through a loan from another corporation that he and Erenberg controlled. In exchange for his efforts, Kreisler was to receive a $35,000 fee from Garlin, payable when Garlin settled its claim against the bankruptcy estate.

Garlin and Community Bank eventually consummated this transaction, and the bank assigned its note and secured claim on the Western Avenue properties to

Garlin. But when Garlin moved to have the secured claim paid, it ran into trouble in the bankruptcy court. Kreisler and Erenberg had not disclosed their relationship with Garlin to either the bankruptcy court or the trustee. Although the two were clearly the driving force behind the company—they had formed it and funded it through a loan, and Kreisler stood to gain most or all the profits through his $35,000 fee—they were not the owners or directors of the company. On paper, the owners and directors were Kreisler's sister and a close friend of Erenberg's; the two later testified that they had not contributed any capital or participated in any of the operations of the company.

When the bankruptcy judge discovered Kreisler's and Erenberg's involvement with Garlin, he threw the book at them. Invoking the doctrine of equitable subordination, the judge held that Garlin—whose secured claim ordinarily would have been one of the first paid—would be paid last. Because there wasn't enough money to pay the unsecured creditors, Garlin came away with nothing. Garlin appealed to the district court, which affirmed. This appeal followed.

## II.  Discussion

The only issue in this case is whether the bankruptcy judge properly applied equitable subordination, a judge-made doctrine now incorporated into the bankruptcy code at 11 U.S.C. § 510(c). *See* 4 COLLIER ON BANKRUPTCY § 510.05 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007). Equitable subordination allows the bankruptcy

court to reprioritize a claim if it determines that the claimant is guilty of misconduct that injures other creditors or confers an unfair advantage on the claimant. *In re Lifschultz Fast Freight*, 132 F.3d 339, 344 (7th Cir. 1997) (citing *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir. 1977)). The result is usually that the claimant receives less money than it otherwise would (or none at all), but that is not the goal. Equitable subordination is remedial, not punitive, and is meant to minimize the effect that the misconduct has on other creditors. *Mobile Steel*, 563 F.2d at 700-01.

Equitable subordination generally requires the satisfaction of three conditions: (1) the claimant must have "engaged in 'some type of inequitable conduct'"; (2) the misconduct must have "'resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant'"; and (3) subordination must "'not be inconsistent with the provisions of the Bankruptcy Act.'" *United States v. Noland*, 517 U.S. 535, 538-39 (1996) (quoting the Fifth Circuit's "influential opinion" in *Mobile Steel*, 563 F.2d at 700)). If these conditions are met, equitable subordination is applied only to the extent necessary to undo the effect of the misconduct on other creditors. *Mobile Steel*, 563 F.2d at 701.

We noted in *Lifschultz* that "[i]n the context of equitable subordination, the type of conduct that has been considered inequitable generally falls within the following categories: (1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) [the] claimant's use of the debtor as a mere instrumentality or alter ego." 132

F.3d at 344-45 (citations and internal quotation marks omitted). The conduct at issue here does not fit neatly into any of these categories; the bankruptcy court acknowledged as much. Nonetheless, the court equitably subordinated Garlin's claim after characterizing Garlin's purchase of Community Bank's junior mortgage as "an elaborate scheme" by Kreisler and Erenberg to receive proceeds from the sale of their property "to the exclusion of their unsecured creditors."

We can put to one side whether the court's finding of inequitable conduct was correct. Although Garlin asks us to reexamine both the finding of misconduct and the level of scrutiny the court applied in reaching it,[1] those aspects of the bankruptcy court's analysis ultimately do not affect our conclusion. Even accepting that Garlin (Kreisler and Erenberg) committed misconduct within the contemplation of this equitable doctrine, misconduct alone doesn't justify subordination of this claim. Only misconduct that harms other creditors will suffice, and there is no evidence that Kreisler and Erenberg's scheme harmed any of their creditors.

The only creditor that was affected by Kreisler and Erenberg's purchase of Community Bank's claim was Community Bank. But the bank isn't complaining; it voluntarily sold its claim at a deep discount. And

---

[1] "Courts subject the dealings of an insider to 'rigorous scrutiny'" for inequitable conduct. *Lifschultz*, 132 F.3d at 344 (quoting *Pepper v. Litton*, 308 U.S. 295, 306 (1939)). The bankruptcy court applied this standard to Garlin's claim.

although the bankruptcy court thought it significant that Kreisler and Erenberg initially hid their connection to Garlin, there is no evidence that Community Bank cared about the affiliation. On the contrary, the bank negotiated the sale of its claim directly with Kreisler. As for the other creditors, they were not affected at all and would be in the same position regardless of whether it was Community Bank or Garlin asserting the junior lien against the Western Avenue properties.

Our conclusion requires one minor qualification: Garlin's decision to purchase Community Bank's claim might have disadvantaged the other creditors if it interfered with the trustee's own settlement with Community Bank. According to the trustee, that's what happened here: she claims to have been negotiating a deal with Community Bank under which the bank would reduce one of its claims in return for the trustee's help foreclosing on the other property. But the trustee presented no evidence that any deal with Community Bank was imminent or even likely. Indeed, at oral argument the trustee's counsel acknowledged that the trustee had only "had discussions" with Community Bank. No deal had been reached, and whether such a deal could have been reached is speculation. Moreover, even if the trustee was close to an agreement with Community Bank, it is far from clear that Garlin's usurpation of that deal would amount to misconduct. Debtors generally do not owe fiduciary duties to their creditors. *Lifschultz*, 132 F.3d at 346. Kreisler and Erenberg were not required to offer their deal with Community Bank to the trustee before accepting it.

The bankruptcy court cited several other aspects of Garlin's transaction with Community Bank that might support a finding of misconduct, but none caused injury to Kreisler or Erenberg's creditors. For example, the court faulted Kreisler and Erenberg for improperly "dominating" Garlin, for treating it essentially as their own even though it was owned—at least on paper—by independent shareholders. But that misconduct did not harm other creditors; any abuse of the corporation hurt only Garlin's independent shareholders, and the trustee has not suggested that these shareholders were also creditors of Kreisler or Erenberg's estates.

The bankruptcy court also found that Garlin had failed to properly notify the court when it acquired Community Bank's claim, as required by Rule 3001(e)(2) of the *Federal Rules of Bankruptcy Procedure*. But again, there is no evidence that the Rule 3001(e)(2) violation harmed other creditors. Rule 3001(e)(2) requires the purchaser of a claim to notify the bankruptcy court after the purchase so that the bankruptcy court can allow the purported seller the opportunity to object before the claim is irrevocably deemed to be transferred. The point of the rule is to prevent fraudulent transfers. But Community Bank, the creditor protected by the rule, has not claimed the transfer was fraudulent and has not otherwise complained about the transaction.

The trustee suggests that the other creditors were harmed by the Rule 3001(e)(2) violation because if she had known Garlin had a deal with Community Bank, she would have proposed an alternative that would have

been more favorable to the other creditors than Garlin's. But that would have been impossible. Rule 3001(e)(2) required Garlin to notify the bankruptcy court only *after* it had purchased Community Bank's claim—too late for the trustee to negotiate a better deal with Community Bank.

There is, no doubt, a certain underhanded quality to Kreisler and Erenberg's conduct; their effort to hide their involvement suggests that they thought they were doing something wrong. But the bankruptcy rules allow claims trading, and their use of Garlin to purchase Community Bank's claim did not harm other creditors. Equitable subordination was therefore improper.

REVERSED AND REMANDED.