06-3449-bk

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————

August Term, 2006

(Argued: June 25, 2007                                   Decided: October 29, 2008)

Docket No. 06-3449-bk

———————

IN RE: U.S. WIRELESS DATA, INC.,

*Debtor,*

————————

REGEN CAPITAL I, INC.,

*Appellant,*

— v.—

ALAN D. HALPERIN, as Liquidation Trustee,

*Appellee.*

———————

Before:

WINTER, CABRANES, AND RAGGI,

*Circuit Judges.*

————————

Appeal from a judgment of the United States District Court for the Southern District

of New York (P. Kevin Castel, *Judge*) affirming an order of the United States Bankruptcy

Court (Robert D. Drain, *Bankruptcy Judge*) for the same district expunging an "unsecured

claim" filed by appellant ReGen Capital I, Inc. ("ReGen"), on the ground that it sought

1

additional compensation for a previously resolved "cure claim."   We identify no merit in ReGen's argument that the claim was cured without proper notice of consequences, nor in its contention that, having failed to raise a timely challenge to the cure amount, it could pursue additional relief by reasserting its claim as a general unsecured obligation of the debtor.   Finally, we conclude that the "best interests of creditors" test, 11 U.S.C. § 1129(a)(7), affords ReGen no relief in this case.

AFFIRMED.

_____

PAUL RUBIN, Herrick, Feinstein LLP, New York, New York, *for Appellant*.

DEBRA J. COHEN (Robert D. Raicht, *on the brief*), Halperin Battaglia Raicht, LLP, New York, New York, *for Appellee*.

_____

PER CURIAM:

Regen Capital I, Inc. ("ReGen"), as authorized administrative agent of AT&T Corp. ("AT&T"), filed a general unsecured claim in the United States Bankruptcy Court for the Southern District of New York (Robert D. Drain, *Bankruptcy Judge*) against U.S. Wireless Data, Inc. ("the Debtor"), based on pre-petition defaults arising from an executory contract for AT&T to provide the Debtor with telecommunications services.  Having missed the bar date set by the bankruptcy court for "cure claims," see 11 U.S.C.  § 365(b)(1)(A); see also infra at **[5-7]** (discussing role of cure claims in Chapter 11 reorganizations), ReGen asserted

2

that it was filing a general unsecured claim. Rejecting this characterization, the bankruptcy court expunged ReGen's claim, holding (a) that the AT&T claim pursued by ReGen had been cured in an amount submitted by the Debtor, and (b) that AT&T's failure to challenge that amount by filing a cure claim within the court-ordered bar date precluded ReGen from doing so indirectly by filing a general unsecured claim. ReGen challenged the ruling in the United States District Court for the Southern District of New York (P. Kevin Castel, *District Judge*), which affirmed. See In re: U.S. Wireless Data, Inc., No. 06 Civ. 829, 2006 U.S. Dist. LEXIS 42577 (S.D.N.Y. June 21, 2006).

On appeal from that judgment, ReGen argues that the bankruptcy court's bar date orders for cure claims were defective because they failed to provide clear notice of the claims covered by the filing deadline and the consequences for missing the deadline. ReGen further asserts that expungement of its claim was inequitable because where, as in this case, the Debtor was solvent, consideration of its claim together with other general unsecured claims would not have frustrated the purpose of 11 U.S.C. § 365(b)(1) or adversely affected any interested party. Finally, ReGen contends that expungement allowed the Debtor to circumvent the Bankruptcy Code's priority-distribution scheme by subordinating ReGen's claim to the interests of equity holders in contravention of the "best interests of creditors" test for Chapter 11 reorganization. See 11 U.S.C. §§ 1129(a)(7)(A), 726(a). Because we are not persuaded by any of these arguments, we affirm the judgment of the district court.

3

## I. Background

### A. Events Leading to the Debtor's Chapter 11 Filing

The Debtor, a Delaware corporation headquartered in New York, had provided wireless transaction delivery and gateway services to the payments processing industry. Initially a hardware manufacturer of wireless point-of-sale terminals, in 1999 the Debtor launched its "Synapse wireless platform and transaction gateway," a software platform that allowed merchants accepting credit or debit cards to transmit payment transactions faster and less expensively than had been possible using a traditionally wired telephone line. In 2000, the Debtor's business expanded to include the "Synapse Adapter," which converted dial-up credit card terminals to wireless ones, and the "Synapse Enabler," which not only allowed vending machines and taxicab meters to process credit cards, but also permitted faster payment processing for businesses such as fast-food restaurants. These aspects of the Debtor's commercial activities are collectively referred to herein as the "Synapse business."

The Debtor partially financed its Synapse business with the assistance of a $2.75 million bridge loan from Brascan Financial Corporation ("Brascan"), secured by the Debtor's assets. By January 2004, the Debtor had suffered significant losses and had experienced a negative cash flow. Specifically, the Debtor had exhausted the bridge loan and accumulated a deficit of nearly $145 million, while its principal source of liquidity totaled approximately $456,000 in cash and cash equivalents. Despite an additional advance of $250,000 from

Brascan, on March 26, 2004, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in order "to protect, preserve and maximize the value of its assets through sales under section 363 of the Bankruptcy Code." Debtor's Motion for Various Orders at 6 ¶ 16, In re: U.S. Wireless Data, Inc., No. 04-12075 (Bankr. S.D.N.Y. Mar. 26, 2004). After filing its petition, the Debtor continued to manage and operate its business as a debtor in possession under 11 U.S.C. §§ 1107 and 1108.

B.     The Sale of the Debtor's Synapse Business Assets and the Resolution of Cure Claims

At the same time that the Debtor filed for Chapter 11 relief, it sought court approval for the sale of its assets to a Brascan subsidiary that had been formed for the specific purpose of acquiring the Synapse business. The sale proposal contemplated the Debtor's assumption and assignment of an attached schedule of executory contracts pursuant to 11 U.S.C. § 365.

1.     The Law Relevant to a Chapter 11 Debtor's Proposed Assumption and Assignment of Contracts

It is useful at this point to note that contract assumption is an important re-organizational tool under Chapter 11 because it allows a trustee, or a debtor in possession, see id. § 1107(a) (granting debtor in possession virtually same rights and powers as trustee in Chapter 11 proceedings), "to go through the inventory of executory contracts . . . and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject," In re Lavigne, 114 F.3d 379, 386 (2d Cir. 1997) (internal quotation marks

5

omitted).[1] Section 365 enables a debtor in possession effectively to compel non-debtor parties to contracts "to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so." In re Chateaugay Corp., 10 F.3d 944, 955 (2d Cir. 1993) (internal quotation marks omitted).

Assumption, however, is subject to court approval based on a review of the totality of the circumstances. See In re Orion Pictures Corp., 4 F.3d 1095, 1099 (2d Cir. 1993) ("[A] bankruptcy court reviewing a trustee's or debtor-in-possession's decision to assume or reject an executory contract [pursuant to § 365] should examine a contract and the surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it."). For a bankruptcy court to make a responsible determination as to an assumption application, it is important for the court to know the universe of claims arising under the contracts to be assumed. See, e.g., In re Buckhead Am. Corp., 180 B.R. 83, 88 (D. Del. 1995) (observing that it would be "difficult to see how" court could determine if assumption "was a reasonable exercise of the debtor's business

---

[1] Although § 365 does not define the term "executory contracts," courts have long employed the definition articulated by Professor Countryman, i.e., "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973); see In re Penn Traffic Co., 524 F.3d 373, 379 (2d Cir. 2008) (observing that "most courts and scholars" look to the definition of executory contract "first articulated by Professor Vernon Countryman in his seminal 1973 law review article"); 3 Collier on Bankruptcy § 365.02[1], at 365-19 (15th ed. rev. 2008) (noting that "no circuit has rejected the Countryman test" for executory contracts).

6

judgment . . . if, at the time of ruling on the [assumption] motion, unknown claims existed relative to a designated [executory] agreement").

It is particularly important for a bankruptcy court to know to what degree a debtor is in default on an executory contract because a debtor cannot assume such a contract unless the debtor satisfies several statutory conditions designed to make the non-debtor contracting party whole. See In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996). Specifically, a debtor must (1) cure the default, or provide adequate assurance that it will promptly cure it; (2) compensate, or provide adequate assurance that the trustee will promptly compensate, the non-debtor party to the contract for any actual monetary loss caused by the debtor's default; and (3) provide adequate assurance of future performance under the contract. 11 U.S.C. § 365(b)(1)(A)-(C). The first requirement effectively confers priority status on claims of default arising under an assumed contract. See id. § 365(b)(1)(A); cf. In re Chateaugay Corp., 10 F.3d at 954; American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A., 280 F.2d 119, 124 (2d Cir. 1960). The resolution of these claims, generally referred to as "cure claims," strives to restore the "debtor-creditor relationship . . . to pre-default conditions," In re Taddeo, 685 F.2d 24, 26-27 (2d Cir. 1982), bringing the contract back into compliance with its terms, see 3 Collier on Bankruptcy § 365.05[3], at 365-54 (15th ed. rev. 2008).

2.    The Debtor's Assumption and Assignment of the AT&T Contract

Among the executory contracts proposed for assumption in the schedule attached to the Debtor's sale motion in this case was one with AT&T for that company to provide the Debtor with telecommunications services.  The schedule indicated a "cure cost" of $11,406.43 for this contract.  In its motion, the Debtor requested that the bankruptcy court set a deadline, or bar date, for the filing of any cure claim, with potential creditors to be advised that, absent such a filing, they would be limited to the cure amounts set forth in the contract schedule.

a.    The March 31, 2004 Bar Date Notice

By order dated March 31, 2004, the bankruptcy court scheduled a hearing to consider the Debtor's proposed sale of its Synapse business assets as well as the assumption and assignment of the scheduled executory contracts.  By the same order, the court fixed May 5, 2004, as the date by which any cure claim not then filed would be barred.  The order specifically instructed parties to any scheduled executory contract to file proof of "all claims and arrearages against the Debtor under such executory contract that arose prior to the commencement of the Chapter 11 case (the 'Cure Claim')."  In re: U.S. Wireless Data, Inc., No. 04-12075, Order at 5 (Bankr. S.D.N.Y. Mar. 31, 2004) ("March 31 Order") (emphasis added).  Moreover, the March 31 Order warned

> that any party that is required to file a Cure Claim pursuant to this decretal
> paragraph, but fails to do so, shall be bound by the cure amount as set forth on

8

[the contract schedule] and shall be forever barred from asserting any other cure claim(s) against the Debtor, its estate and/or any successful purchaser of the Debtor's assets arising under such executory contract.

Id.

The following day, the Debtor served notice by first-class mail on all non-debtor parties to the executory contracts that the bankruptcy court had "fixed a bar date of May 5, 2004 for the assertion of any cure costs by the non-debtor parties to the executory contracts to be assumed and assigned to Purchaser under the Sale Agreement." Undated Notice of Auction Sale and Hearing on Consideration of Approval of Sale of Debtor's Synapse Assets, at 4, In re: U.S. Wireless Data, Inc., No. 04-12075 (Bankr. S.D.N.Y. 2004). Included with this notice were copies of both the Debtor's March 26, 2004 sale motion (with its attached contract schedule) and the bankruptcy court's March 31 Order.

b.      The April 16, 2004 Bar Date Notice

Approximately two weeks later, on April 16, 2004, the bankruptcy court issued another order approving auction and bidding procedures for the asset sale as well as the payment of a break-up fee. In this order, the court reiterated the cure claims bar date, stating that

according to the [March 31 Order], all non-debtor parties to the Executory Contracts were directed to electronically file with the Clerk of the Bankruptcy Court a cure claim, setting forth all claims and arrearages against the Debtor due under such Executory Contract that arose prior to the Petition Date (the "Cure Claim"), . . . on or before May 5, 2004 at 4:00 p.m., provided, however, that any party that is required to file a Cure Claim but fails to do so, will be

9

bound by the cure amount as set forth on [the contract schedule] and will be forever barred from asserting any other claims against the Debtor, its estate and/or any successful purchaser of the Debtor's assets arising under such Executory Contract.

In re: U.S. Wireless Data, Inc., No. 04-12075, Order at 5-6 ¶ 4(iii) (Bankr. S.D.N.Y. Apr. 16, 2004) ("April 16 Order").

### c. Without Challenge, the Bankruptcy Court Declares the AT&T Contract Cured and Approves the Assignment

ReGen does not dispute AT&T's receipt of the Debtor's sale motion, its schedule of executory contracts proposed for assumption, or the bankruptcy court's March 31 and April 16 Orders. Nor does it dispute that AT&T did not file any cure claim before the appointed time on May 5, 2004.

A sale of the Debtor's assets was, in fact, held on May 11, 2004, and, by order dated May 12, 2004, the bankruptcy court formally approved the sale of the Synapse business, as well as the Debtor's assignment of the assumed executory contracts to the successful bidder, Transaction Network Services. Upon finding the assumption and assignment of these contracts to satisfy the conditions set forth in 11 U.S.C. § 365(b)(1), the court further stated:

All defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the date of this Sale Order without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code, if any, shall be deemed cured at the Closing of the Asset Sale or as soon thereafter as practicable, and the Purchaser shall have no liability for any such default or obligation, except as otherwise expressly provided in the Sale Agreement.

10

In re: U.S. Wireless Data, Inc., No. 04-12075, Order at 9-10 ¶ 11 (Bankr. S.D.N.Y. May 12, 2004) ("Sale Order").

C.     ReGen Acquires AT&T's Claim Against the Debtor and Files for Relief

Approximately two weeks later, on May 26, 2004, AT&T assigned to ReGen its claim against the Debtor. The following month, by order dated June 29, 2004, the bankruptcy court established August 9, 2004, as the deadline for filing any remaining claims against the Debtor. That order expressly disclaimed any extension of the bar date "previously established by this Court to file claims arising from the assumption and assignment of executory contracts in connection with the Debtor's sale of its assets to Transaction Network Services, Inc." In re: U.S. Wireless Data, Inc., No. 04-12075, Order at 2 (Bankr. S.D.N.Y. June 29, 2004). Several weeks before the August 9, 2004 deadline, ReGen nevertheless filed with the bankruptcy court proof of the claim it had acquired from AT&T in the amount of $71,282.60 (designated in the bankruptcy proceeding as Claim No. 26).

Although the precise timing is disputed, some time around the close of the asset sale to Transaction Network Services and before the filing of ReGen's claim, the Debtor had made a "cure" payment to AT&T in the amount of $22,315.56 to satisfy its default under the AT&T contract. The Debtor asserts that it proffered more than the amount listed on the executory contract schedule because it had determined that pre-petition arrearages under the AT&T contract in fact exceeded $11,406.43. AT&T appears to have accepted this payment

11

without objection. ReGen nevertheless submits that $48,967.04 remains owing on the initial $71,282.60 claim.

  D.  Confirmation of the Debtor's Reorganization Plan and the Expungement of ReGen's Claim

On December 27, 2004, the bankruptcy court approved the Debtor's Chapter 11 reorganization plan, finding that all interested parties had received proper notice and been afforded an opportunity to be heard. ReGen did not object to the reorganization plan. It asserts that it had no reason to do so because, before any challenge was raised to its filed claim, it expected to collect together with other unsecured creditors.

On February 14, 2005, the reorganization plan's Liquidation Trustee, appellee Alan D. Halperin ("Trustee"), submitted a first omnibus objection to remaining claims against the bankruptcy estate, notably including pre-petition contract defaults that were cured as part of the contracts' assumption. ReGen's Claim No. 26 was listed in an attached exhibit to the Trustee's filing as falling within this category of paid claims. ReGen challenged the Trustee's objection, whereupon the parties proceeded to a hearing before the bankruptcy court. Ruling in favor of the Trustee, the court found that ReGen's predecessor in interest, AT&T, had received unambiguous notice of the cure-claims bar date. Further, the bankruptcy court ruled that, because ReGen had not presented a timely challenge to the Plan confirmation, it could not do so now. Accordingly, by order dated December 22, 2005, the bankruptcy court expunged ReGen's claim in its entirety.

E.     The District Court Judgment

On ReGen's appeal, the district court affirmed the bankruptcy court's expungement order, ruling that the March 31 Order was clear as to the deadline for filing cure claims and the consequences for failing to do so. Even if an ambiguity could be identified in the March 31 Order, the district court found that it was clarified by the April 16 Order. Insofar as ReGen argued that the Debtor's reorganization plan was improperly confirmed under 11 U.S.C. § 1129(a)(7)(A)(ii) because its distribution scheme did not comport with 11 U.S.C. § 726(a) (listing distribution priorities), the district court ruled that § 726 does not apply in Chapter 11 cases. Because ReGen does not challenge this last aspect of the district court's judgment, we will not discuss it further. See In re Cacioli, 463 F.3d 229, 235 n.6 (2d Cir. 2006) (deeming argument not raised on appeal waived).

## II.     Discussion

A.     Standard of Review

On this appeal from the district court's affirmance of a bankruptcy court's order, "we review the decision of the bankruptcy court independently," examining its conclusions of law de novo and its factual findings for clear error. Adelphia Bus. Solutions, Inc. v. Abnos, 482 F.3d 602, 607 (2d Cir. 2007). We accord deferential review to a bankruptcy court's exercise of its equitable authority, including the decision to deny a request to file late claims, and we will reverse only for abuse of discretion. See id.; In re: Enron Corp., 419 F.3d 115, 124 (2d

13

Cir. 2005).

B.    The Adequacy of the Bankruptcy Court's Notice of the Cure-Claims Bar Date

The Federal Rules of Bankruptcy Procedure permit bankruptcy courts to establish bar dates by which proofs of claim must be filed or thereafter forfeited. See Fed. R. Bankr. P. 2002(a)(7), 3003(c)(3). Creditors, however, are entitled to adequate notice of bar dates and are not themselves required to make independent inquiry to ascertain their existence. See, e.g., City of New York v. New York, New Haven & Hartford R.R., 344 U.S. 293, 297 (1953) (observing that "even creditors who have knowledge of a [bankruptcy] reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred"). Specifically, a creditor is entitled to "at least 20 days' notice by mail of . . . the time fixed [by the bankruptcy court] for filing proofs of claims pursuant to Rule 3003(c)." Fed. R. Bankr. P. 2002(a)(7).

The law further demands that, ordinarily, a "bar date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 398 (1993) (holding that creditor's failure to file before bar date constituted excusable neglect where notice of bar date was given "peculiar and inconspicuous placement . . . in a notice regarding a creditors['] meeting, without any indication of the significance of the bar date" (internal quotation marks omitted) (second alteration in original)); see also In re Herd, 840 F.2d 757, 759-60 (10th Cir. 1988) ("Written notice of the bar date for filing claims should be clear and definite, not

14

abstract and ambiguous.")

In arguing that it was deprived of its claim without adequate notice, ReGen does not dispute that the March 31 and April 16 Orders both clearly identified May 5, 2004, as the bar date for filing cure claims on executory contracts, including the one between the Debtor and AT&T. Instead, ReGen argues that these orders were ambiguous as to what future claims would be barred by a failure to file a cure claim within the prescribed time. ReGen asserts that, if the Debtor had not applied to assume the AT&T contract, ReGen would have had a general unsecured claim against the Debtor. ReGen submits that the March 31 Order, by referencing a bar on "any other cure claim(s) . . . arising under such executory contract," March 31 Order at 5 (emphasis added), did not provide clear notice that the failure to file a "cure claim[]" before the May 5, 2004 deadline would bar the subsequent filing of a "general unsecured claim" arising under a scheduled executory contract. Appellant's Br. at 19. To the extent the April 16 Order referenced a bar on "any other claims . . . arising under such Executory Contract," April 16 Order at 6 ¶ 4(iii) (emphasis added), ReGen submits that this phrase did not resolve the initial ambiguity because the language was slipped into an order specifying the bidding procedures for the asset sales, a matter of no particular interest to AT&T or ReGen.

ReGen's arguments are unconvincing. First, we identify no ambiguity in the March 31 and April 16 Orders' notification as to the type of claims that would be barred by the

15

failure to file a timely cure claim. Both orders served clear notice that all pre-petition claims arising under the executory contracts scheduled for assumption would be barred if not raised with the bankruptcy court by May 5, 2004. The fact that the claims to be barred were referenced in the March 31 Order as "cure claim(s)" and in the April 16 Order as "any other claims" gave rise to no ambiguity because both orders specifically defined the term "cure claim" as "all claims and arrearages against the Debtor under such executory contract[s] that arose prior to" the commencement of the Debtor's Chapter 11 case. March 31 Order at 5; see April 16 Order at 5 ¶ 4(iii) (employing nearly identical language). This broad definitional language was used to advise parties as to the claims they were required to file by May 5, 2004. The bar notice advised that a failure to meet the filing deadline for cure claims as so defined would result in the party being "bound by the cure amount" set forth in the attachment to the Debtor's sale motion and "forever barred from asserting any other cure claim(s)" arising under the executory contracts. March 31 Order at 5; see April 16 Order at 5-6 ¶ 4(iii). Precisely because the cure claims required to be filed encompassed "all [pre-petition] claims and arrearages against the Debtor" arising under the executory contracts scheduled for assumption, the cure claims barred by a failure to meet the filing deadline are necessarily understood to reach at least as far. March 31 Order at 5; see April 16 Order at 5-6 ¶ 4(iii). Thus, we conclude that AT&T received clear notice, in both the March 31 and April 16 Orders, that if it failed to file a cure claim before May 5, 2004, it would be thereafter

16

barred from filing <u>any</u> claim for pre-petition defaults arising under the executory contracts scheduled for assumption.

ReGen's other notice arguments merit little discussion. To the extent ReGen faults the bankruptcy court for failing to explain how the bar date operated with respect to defaulted contracts that the Debtor chose not to assume, the argument is irrelevant to this appeal because the Debtor did move to assume the AT&T contract. Similarly irrelevant is the inconsistency that ReGen asserts between the court's orders and the Debtor's sale motion, all of which refer only to pre-petition arrearages, and the final sale order, which addresses both pre- and post-petition arrearages. AT&T did not mistakenly file a claim for pre-petition arrearages only to discover later that it was also required to file a claim for post-petition arrearages. Rather, AT&T failed to file <u>any</u> claim before the May 5, 2004 bar date. At any rate, expunged Claim No. 26 <u>is</u> a pre-petition claim arising "out of telecommunications services provided by AT&T to the Debtor before the Debtor's bankruptcy filing." Appellant's Br. at 4. It therefore clearly falls within the class of claims barred by the bankruptcy court's orders.

Because we conclude that the bankruptcy court's March 31 Order provided clear notice that all pre-petition claims arising under the AT&T executory contract had to be filed with the court by May 5, 2004, or be forever forfeited, we need not specifically address ReGen's argument that AT&T was free to ignore a similar notice contained in the April 16

17

Order.  To the extent ReGen supports this argument by noting that the April 16 Order pertained to details of the Debtor's asset sale, which "would not have been read by parties to executory contracts who had no interest in bidding for the assets of the Debtor, and who had already received notice of the cure claims bar date," id. at 13, we note simply that such a course of conduct hardly seems prudent.  See In re Keene Corp., 188 B.R. 903, 911 (Bankr. S.D.N.Y. 1995) (rejecting claimant's contention "that it was reasonable not to read beyond the caption because of the misleading nature of the Bar Date Notice"); In re Nutri*Bevco, Inc., 117 B.R. 771, 783 (Bankr. S.D.N.Y. 1990) (noting that, "'[w]hen the holder of a large, unsecured claim . . . receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril'" (quoting In re Gregory, 705 F.2d 1118, 1123 (9th Cir. 1983)).  In any event, the April 16 Order did not change the consequences specified in the March 31 Order for failing to file a required cure claim by the May 5, 2004 deadline.

In sum, because AT&T received sufficient notice of the consequences of ignoring the cure claims bar date, that bar date applies with full force against its successor, ReGen.

C.     ReGen's Insistence that the Bar Date Does Not Preclude Its Filing of a General Unsecured Claim Based on the AT&T Contract

ReGen asserts that, even if the bankruptcy court's notices bar AT&T (or its successor) from filing an untimely cure claim, that should not bar ReGen from pursuing a different kind

18

of claim. It submits that a party with a cure claim may choose not to demand priority payment without losing the ability to get in line with the debtor's general unsecured creditors. ReGen argues that nothing in the Bankruptcy Code precludes such dual characterization of a claim. Moreover, it contends that the payment of its claim as a general unsecured one would neither frustrate the purpose of § 365 nor adversely affect any other interested party in light of the Debtor's solvency. We disagree.

As the bankruptcy court explained, to allow a party who misses a bar date to pursue untimely cure claims as general unsecured ones "would severely undermine the debtor's and the Court's ability to analyze . . . and exercise their rights under Section 365." Tr. at 29, In re: U.S. Wireless Data, Inc., No. 04-12075 (Bankr. S.D.N.Y. Dec. 7, 2005). The observation is particularly apt in this case, where the executory contracts that were assumed and assigned in connection with the asset sale were identified by the bankruptcy court as "an integral part of the value of the Synapse Business Assets." Sale Order at 6 ¶ P. A debtor's decision to assume a contract depends on the debtor's ability to cure (or provide adequate assurance that it will promptly cure) all pre-petition defaults arising under that contract. See 11 U.S.C. § 365(b)(1)(A). Consequently, a sound assumption decision depends on the debtor's — and, ultimately, the bankruptcy court's — full awareness of the universe of executory-contract defaults and their cure costs. See, e.g., In re Nat'l Gypsum Co., 208 F.3d 498, 506 (5th Cir. 2000) (explaining that debtor "must take full account of the cost to cure all existing defaults owed to the non-debtor party when assessing whether the contract is beneficial to the

19

estate").

Though ReGen's Claim No. 26 is a general unsecured claim in the literal sense, it plainly falls into the narrower, more specific category of a cure claim because it is a claim "against the Debtor under [an] executory contract that arose prior to the commencement of the Chapter 11 case," March 31 Order at 5, and that the Debtor had in fact assumed, see Sale Order at 8-9 ¶ 7. As discussed in the previous section, the bankruptcy court's March 31 Order served clear notice on AT&T that the claim would be settled for an amount specified by the Debtor unless AT&T filed a claim in a different amount by 4:00 p.m. on May 5, 2004. More to the point, that order advised AT&T that its failure to file such a claim by the appointed time would bar it from doing so in the future. To interpret this bar to prohibit only priority claims for cure based on the AT&T contract, as ReGen urges, would not only run counter to the plain language of the bankruptcy court's March 31 and April 16 Orders, it would also upset the finality and repose that such orders provide to reorganizing entities. Because ReGen's claim clearly falls within the March 31 Order's definition of a "cure claim" to which the May 5, 2004 bar date applied, the bankruptcy court correctly expunged that claim as untimely.

D.     Expungement of ReGen's Claim Does Not Contravene the "Best Interests of Creditors" Test

A Chapter 11 reorganization plan may not be confirmed unless it satisfies a number of statutory requirements, including the "best interests of creditors" test. See 11 U.S.C.

20

§ 1129(a)(7)(A). This test requires that each holder of an impaired claim or interest either accept the plan or receive under the plan not less than it would receive in a Chapter 7 liquidation. See id.; United States v. Reorganized CF&I Fabricators of Utah, Inc., 518 U.S. 213, 228 (1996). Section 1129(a)(7) cross-references § 726(a), which "spells out the order in which the assets of a Chapter 7 bankruptcy estate are distributed to unsecured creditors." In re Vecchio, 20 F.3d 555, 556 (2d Cir. 1994). Under this provision, allowed unsecured claims — even if filed out of time — must be paid before equity interest holders are permitted to recover from the debtor's estate. See 11 U.S.C. § 726(a)(3); see also Louisiana World Exposition v. Fed. Ins. Co., 858 F.2d 233, 251 (5th Cir. 1988) (noting that, under hierarchy of interests created by Bankruptcy Code, shareholders' interests are subordinate to those of creditors).

ReGen argues that the bankruptcy court could not expunge its unsecured claim consistent with the best-interests-of-creditors test because, by doing so, it allowed the Debtor's shareholders to recover a portion of the estate while ReGen, the holder of an unsecured claim, remained unpaid. To the extent the bankruptcy court rejected this argument by noting ReGen's failure to object to the reorganization plan before its confirmation, ReGen submits that it could not have been expected to file an objection before it had any notice that its timely filing of an unsecured claim would be challenged. We need not conclusively

21

decide this point because, even if we were to resolve it in ReGen's favor,[2] its challenge to expungement would fail for the simple reason that the claim ReGen tried to assert had in fact been settled long before the reorganization plan was confirmed.

Approximately six months before confirmation of the reorganization plan, the Debtor cured all contract obligations to AT&T arising before the Chapter 11 filing by paying $22,315.56. Indeed, such payment was a statutory precondition to the bankruptcy court's approval of the Debtor's assumption and assignment of the AT&T contract as part of the assets sale. See 11 U.S.C. § 365(b)(1). The Sale Order explicitly stated that "[a]ll defaults or other obligations of the Debtor under the Assigned contracts arising or accruing prior to [May 12, 2004] . . . shall be deemed cured at the Closing of the Asset Sale or as soon thereafter as practicable." Sale Order at 9-10 ¶ 11. Thus, because the law views AT&T as having been made whole pursuant to § 365(b)(1) on the claim at issue, neither AT&T nor its successor ReGen could sue the Trustee on a claim that had thus been settled. The bankruptcy court's expungement of ReGen's cured claim did not implicate the best-interests-of-creditors test.

The Debtor's solvency at the time of reorganization warrants no different conclusion. Any claim ReGen might have arising after assumption and assignment of the contract at issue

---

[2] The Trustee asserts that the reorganization plan's disclosure statement warned that "'a substantial portion of the [unsecured] Claims will ultimately be expunged because . . . they have been paid in connection with the assumption and assignment of executory contracts.'" Appellee's Br. at 39 (quoting Plan Disclosure Statement).

would constitute a post-petition administrative claim not governed by § 1129(a)(7).  See <u>In re Kiwi Int'l Airlines, Inc.</u>, 344 F.3d 311, 318 (3d Cir. 2003) ("[B]ecause assumption acts as a renewed acceptance of the terms of the executory bargain, the Bankruptcy Code provides that the cost of performing the debtor's obligations is an administrative expense of the estate, which will be paid first out of the assets of the estate." (internal quotation marks omitted)); <u>In re Barakat</u>, 99 F.3d 1520, 1527-28 (9th Cir. 1996) (holding that where debtor assumes lease, tenant security depositors "have no provable claim against the bankruptcy estate . . . . The obligations assumed by the debtor under the continued leases constitute post-petition administrative claims . . . [and t]heir holders are not entitled to vote on a plan of reorganization" (internal quotation marks omitted)).

In sum, because AT&T failed to file a cure claim before the bankruptcy court's bar date, it and its successor ReGen were bound by the cure amount listed on the Debtor's original contract schedule.  That the asset sale proved lucrative enough for the Debtor to pay its creditors through the reorganization plan and still make some distribution to shareholders is irrelevant to this appeal because, at the time of plan confirmation and thereafter, ReGen had no claim for pre-petition arrearages under the AT&T executory contract.

## III.    Conclusion

To summarize:

1.  AT&T was given clear notice that its failure to file "all [pre-petition] claims and arrearages" against the Debtor arising under an executory contract proposed for assumption

23

would (a) limit its recovery to the Debtor's proposed cure amount and (b) forever bar it from bringing any other such pre-petition claim. That notice is binding on ReGen as its claims successor.

2. The bankruptcy court's bar order applied to all unfiled pre-petition claims and arrearages arising under the AT&T contract. ReGen cannot seek to avoid this bar by characterizing an untimely challenge to the cure amount as a general unsecured claim.

3. The bankruptcy court's Sale Order declared the Debtor's pre-petition defaults on the AT&T contract cured some six months before the confirmation of the Debtor's reorganization. This left ReGen with no claim to assert that would implicate the best-interests-of-creditors test.

Accordingly, the judgment of the district court is hereby AFFIRMED.