In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1524

IN THE MATTER OF:

UAL CORPORATION,

*Debtor.*

REGEN CAPITAL I, INC.,

*Appellant,*

*v.*

UAL CORPORATION, *et al.*,

*Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 5225—**John W. Darrah**, *Judge.*

ARGUED OCTOBER 22, 2010—DECIDED FEBRUARY 18, 2011

Before KANNE, TINDER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* A claims trader buys claims against bankrupt debtors from creditors at a discount. See *In re Kreisler*, 546 F.3d 863, 864 (7th Cir. 2008). This appeal addresses how purchased claims can be affected by a debtor's decision to assume or reject executory contracts from which those claims arose. We affirm the district

court's judgment holding that the purchaser of a pre-petition unsecured claim arising from executory con-tracts is not entitled to a "cure" that would pay it 100 cents on the dollar for the claim because the debtor did not assume the executory contracts at issue.

AT&T Corporation and appellant ReGen Capital I, a financial firm that operates as a claims trader, entered into a contract. AT&T agreed to assign to ReGen pre-petition unsecured claims that AT&T held against parties in bankruptcy. One of these claims was a gen-eral unsecured claim that AT&T maintained against debtor-appellee United Air Lines, Inc. after United de-faulted on a series of contracts for telecommunications services. Believing that United intended to assume the AT&T executory contracts from which the general unse-cured claim arose, ReGen filed a "cure claim" in United's bankruptcy proceedings to collect the full amount of the default. Under the Bankruptcy Code, a debtor cannot assume an executory contract unless the debtor satisfies several statutory conditions, including both receiving court approval and either curing any default or pro-viding adequate assurance that it will promptly cure. See 11 U.S.C. § 365(b). The result of the cure requirement is that a party to an assumed executory contract with the debtor typically comes out well ahead of other unse-cured creditors. United objected to ReGen's cure claim and later filed notice of its intent to reject the AT&T contracts.

The bankruptcy court denied ReGen's cure claim on two grounds. First, the court determined that AT&T had

not assigned ReGen a right that entitled it to file for cure under 11 U.S.C. § 365(b)(1)(A). On that theory, only AT&T as a party to the contracts, and not ReGen, could seek cure if United sought to assume the contracts. Second, the court concluded that, in any case, United had rejected the AT&T contracts, foreclosing any opportunity for either AT&T or ReGen to seek cure. The district court affirmed on both grounds. Although we disagree with the bankruptcy and district courts on the first point, the interpretation of AT&T's assignment to ReGen, we agree with both courts on the second. United's confirmed reorganization plan permitted it to reject the AT&T contracts, and it did so effectively. The rejection barred ReGen from recovering the cure amount.

I. *Factual and Procedural Background*

United and its affiliated debtors filed for Chapter 11 bankruptcy on December 9, 2002. We need not chronicle here the long history of United's bankruptcy proceedings.[1] We focus on AT&T's assignment of its unsecured claim and the treatment of its executory contracts.

On January 16, 2004, AT&T filed a proof of claim in the United bankruptcy proceedings, asserting a general

---

[1] We have considered several appeals arising from the United bankruptcy. See, *e.g.*, *United Air Lines, Inc. v. HSBC Bank USA (In re United Air Lines, Inc.)*, 453 F.3d 463 (7th Cir. 2006); *United Airlines, Inc. v. HSBC Bank USA, N.A.*, 416 F.3d 609 (7th Cir. 2005); *In re UAL Corp.*, 411 F.3d 818 (7th Cir. 2005); *In re United Airlines, Inc.*, 368 F.3d 720 (7th Cir. 2004).

unsecured claim in the amount of $5.4 million, later reduced by the court to $4.9 million. The next month, ReGen filed a "Notice of Transfer of Claim" and a "Notice of Assignment of Claim" that recorded ReGen's purchase of AT&T's claim under their 2002 assignment agreement.

In accord with the provisions of Chapter 11, United filed a proposed reorganization plan in late 2005 to provide a means to satisfy the claims of its creditors and other parties in interest and to make arrangements for future operations. Pursuant to 11 U.S.C. § 1123(b)(2), United's proposed plan provided for the assumption and rejection of executory contracts—contracts where "*significant* unperformed obligations remain on both sides." *Dick v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006) (emphasis in original), quoting *Mitchell v. Streets (In re Streets & Beard Farm Partnership)*, 882 F.2d 233, 235 (7th Cir. 1989). United's proposed plan also addressed means for curing any default on those contracts pursuant to 11 U.S.C. § 1123(a)(5)(G). As it relates to defaults, "to cure" means to remedy or rectify the default and to "restore matters to the *status quo ante*," often by making full payment for services or goods provided before the filing of the bankruptcy petition. See *In re Clark*, 738 F.2d 869, 872 (7th Cir. 1984) (collecting cases). A Chapter 11 debtor may assume an executory contract subject to court approval and only if, at the time of assumption, the debtor-in-possession or trustee "cures, or provides adequate assurance that [it] will promptly cure," any default on the contract. 11 U.S.C. § 365(b)(1)(A). (While there are some exceptions to this requirement,

they are not applicable here. See 11 U.S.C. § 365(b)(1)(A), (b)(2).)

Under the terms of United's plan, its confirmation "constitute[d] the Bankruptcy Court's approval of the proposed treatment of executory contracts" and "determination that the Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their executory contracts." The plan set out a "Cure Bar Date," after which no further cure claims would be accepted from any creditor claiming a default on an assumed executory contract. In an exhibit to the plan entitled "Assumed Executory Contracts and Unexpired Leases," United listed ten AT&T executory contracts. The exhibit did not, however, list any approved or agreed cure amounts.

Most important for the present appeal, United's plan also included a reservation of rights that allowed it to reject any executory contract up to fifteen days after the later of (1) the date on which the contracting parties' agreed to the amount of the cure, or (2) the issuance of a final order from the bankruptcy court establishing the cure. Creditor Sabre, Inc., which also had executory service contracts with United, objected to this provision. Sabre argued that the reservation violated section 365(d)(2) of the Bankruptcy Code, which provides that a trustee may assume or reject an executory contract "at any time before the confirmation of a plan," by authorizing United to postpone final decisions whether to assume or reject executory contracts until long after confirmation and implementation of the plan. After raising these objec-

tions, Sabre negotiated an exemption from the reserved right to reject its executory contracts. ReGen, on the other hand, raised no objection and voted in favor of the plan.

The bankruptcy court confirmed United's plan effective February 1, 2006. United paid ReGen $626,000 in new common stock as its pro rata share of United's distribution to holders of general unsecured claims.

ReGen then submitted a cure claim for the full amount of AT&T's contractual default. ReGen asserted that, by including the AT&T contracts (the contracts that formed the basis of the claim it purchased) in a list labeled "Assumed" contracts, United had elected to assume them. In ReGen's view, that assumption meant that it was entitled to a complete cure, which would confer on its claim priority status like that of an administrative expense claim—it would be reimbursed 100 cents on every dollar of unsecured pre-petition debt. ReGen calculated a cure claim amount of $4.3 million, the total amount owed to AT&T under the contracts, less the value of the new common stock that ReGen received in the earlier distribution.

United objected, asserting that the claim was "not supported by the Reorganized Debtors' Books and Records." On June 4, 2008, United filed notice of its intent to reject the AT&T contracts. United also asserted that the terms of AT&T's assignment to ReGen allowed ReGen to file only a general unsecured claim and not a cure claim. At a hearing on June 18, 2008, the bankruptcy judge ruled that ReGen's general unsecured pre-

petition claim did not carry with it a right to receive a cure payment in connection with the assumption of the contract that gave rise to the claim. ReGen then filed an amended cure claim, and United raised the same objections. On July 29, 2009, the bankruptcy court disallowed the amended cure claim for the same reason it had disallowed the original and because it found that United had properly rejected the AT&T contracts. The district court affirmed on both grounds, and ReGen appealed to this court.

## II. *Discussion*

We take up each of the bankruptcy court's two justifications for denying ReGen's cure claim in turn, beginning with the court's conclusion that the agreement between AT&T and ReGen did not assign to ReGen a right to file a cure claim.

### A. *The Scope of the Assignment*

The bankruptcy court's interpretation of the assignment agreement is a question of law, and we review its interpretation de novo. See *International Production Specialists, Inc. v. Schwing America, Inc.*, 580 F.3d 587, 594 (7th Cir. 2009).

The AT&T-ReGen assignment agreement defined a "claim," with some emphasis added, as:

> any general pre-petition unsecured claim of AT&T against a debtor together with interest, if any, payable

> thereon from and after the Effective Date, and *any actions, claims, lawsuits or rights of any nature whatsoever*, whether against a debtor or any other party, *arising out of or in connection with the Claim*, including, Assignor's right to receive, from and after the Effective Date, any cash, securities, instruments, and/or other property as distributions on the Claim.

The bankruptcy court rejected ReGen's argument that it was entitled to cure, commenting that "the right to cure does not arise out of a claim. It arises out of a contract." The bankruptcy court went on to conclude that the assignment agreement assigned only general pre-petition unsecured claims. According to the court, the general pre-petition unsecured claim referenced in the agreement definition did not and could not become a cure claim. The district court agreed that "the only reasonable interpretation" of the assignment agreement was that ReGen purchased "general prepetition unsecured claims and the right to recover any distribution made on account of those general prepetition unsecured claims," and *not* the right to recover the full amount of the default.

While we do not dispute the bankruptcy court's statement that a right to cure arises out of a contract, we disagree with both courts' conclusion that the language of the AT&T assignment agreement restricted ReGen's treatment to that of a general unsecured claim holder. We hold that the agreement's definition of "claim" is broad enough to include the right to collect a cure amount arising from AT&T's original contracts.

Under the assignment agreement, ReGen received not only the general unsecured claim but also any actions, claims, lawsuits or rights "arising out of or in connection with" that claim. ReGen's cure claim fits within this broad definition. It is connected to the general unsecured claim through the original provision of services from which the default arose. Further, the assignment agreement's definition of "Claim" itself uses the word "claim," which the Bankruptcy Code defines broadly, in relevant part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(a).

We are not persuaded by United's contention that, because a separate filing is required to seek a cure claim, the cure claim is disconnected from the general unsecured claim. The claims stem from the same transaction giving rise to a single right to payment. The priority granted to the right to payment changes (dramatically) based on the debtor's court-approved treatment of the executory contract, but the right is the same. Thus, we interpret the agreement to give ReGen the ability to seek a cure arising out of United's default on the AT&T contracts.[2]

---

[2] Subsection (e) of Federal Rule of Bankruptcy Procedure 3001, which governs proof of claims that have been transferred, provides that in the absence of a timely objection by the transferor, the transferee is substituted for the transferor in

(continued...)

Our conclusion on this point agrees with the Second Circuit's interpretation of exactly the same contract between AT&T and ReGen in *ReGen Capital I, Inc. v. Halperin (In re U.S. Wireless Data)*, 547 F.3d 484 (2d Cir. 2008). The bankruptcy court determined there that ReGen, as assignee of AT&T's pre-petition general unsecured claim, had a valid cure claim but had missed the deadline to file for cure. The district court affirmed. *In re U.S. Wireless Data*, No. 06 Civ. 829, 2006 U.S. Dist. LEXIS 42577, at *1-2 (S.D.N.Y. June 21, 2006). The district court characterized ReGen's purchase as rights that arose under the AT&T contracts. *Id.* at *1. The court held that ReGen, as transferee, was among the parties required to file for cure in order to recover on its claim. (Exactly the same transfer notice form was used in this case.)

The Second Circuit affirmed. It found no difference between the claim ReGen purchased and the claim that AT&T could have pursued. 547 F.3d at 493-94. The Second Circuit clarified that, although ReGen's claim was a general unsecured claim "in the literal sense, it plainly falls into the narrower, more specific category of a cure claim because it is a claim against the Debtor under [an] executory contract that arose prior to the

---

[2] (...continued)
the bankruptcy proceedings. The 1991 Notes of the Advisory Committee to the Federal Rules acknowledge that Rule 3001(e) is intended "to limit the [bankruptcy] court's role [in claims transfers] to the adjudication of disputes" between transferor and transferee.

commencement of the Chapter 11 case." 547 F.3d at 495 (quotation marks omitted; alteration in original). There, as here, AT&T's assignment to ReGen allowed ReGen to seek the full pre-petition amount owed to AT&T, but the assignment separated the issue of cure from the ongoing business relationship between the debtor and AT&T. As a result, AT&T did not have the same incentives to try to force the debtor to make a prompt decision to assume or reject its executory contracts.[3]

Our analysis is also consistent more generally with the Supreme Court's decision in *Shropshire, Woodliff & Co. v. Bush*, 204 U.S. 186 (1907). In that case, the Court considered whether an assignee of a claim for wages earned by an employee of a debtor-employer before the commencement of bankruptcy proceedings was entitled to priority of payment. The bankruptcy statute then in effect granted priority to claims arising from wages earned within three months of the commencement of the bankruptcy proceedings. Act of July 1, 1898, ch. 541, § 64(b), 30 Stat. 544, 563. The Court made clear that the priority associated with a claim is "attached to the debt and not to the person of the creditor; to the claim and not to the claimant." 204 U.S. at 189.

---

[3] The parties debate whether we may properly consider a letter, attached as an exhibit to ReGen's amended cure claim, as an indication of AT&T's intent in the original assignment agreement. In the letter, AT&T "authorizes the payment of [any] cure amount to ReGen." We need not consider the letter because we believe the broad language of the assignment agreement is sufficiently clear.

We came to the same conclusion in *Dorr Pump & Manufacturing Co. v. Heath (In re Dorr Pump & Manufacturing Co.)*, 125 F.2d 610 (7th Cir. 1942). In that case, a group of stockholders of a bankrupt corporation purchased wage earners' claims for the amounts they claimed against the corporation. At the same time, the stockholders and the wage earners agreed in writing that the wage earners had sold and assigned their claims. Their agreement assigned "all right, title, and interest which [the original claim holders] have in and to a certain claim." 125 F.2d at 610. We held that this assignment placed the claim purchaser in the same position as the original claim holders. Notwithstanding changes made to bankruptcy law since the Supreme Court's decision in *Shropshire* and ours in *Dorr*, their shared principle remains good law. Accord, Frederick Tung, *Confirmation and Claims Trading*, 90 Northwestern U. L. Rev. 1684, 1699 (1996) ("The basic premise that drives investment in bankruptcy claims is that the purchaser of a claim . . . generally succeeds to all the rights of its seller. Perhaps the most important of these rights from the purchaser's perspective is the right to demand payment in full on the claim.") (footnote omitted); Chaim J. Fortang & Thomas Moers Mayer, *Developments in Trading Claims: Participations and Disputed Claims*, 15 Cardozo L. Rev. 733, 759 (1993) ("For over eight decades, federal courts from the Supreme Court on down have unanimously held that a claim in the hands of a buyer is no different than a claim in the hands of a seller.").

Like the Second Circuit, we find no ambiguity in the terms of the AT&T-ReGen assignment agreement and

conclude that the agreement enabled ReGen, by way of its purchase of AT&T's claim in the United bankruptcy proceedings, to file for cure just as AT&T could have in the absence of the assignment.

B. *No Assumption Occurred*

A claim holder's right to a cure claim is realized only if the debtor chooses to assume the executory contract under which the debt arose. Although the terms of this assignment agreement would have allowed ReGen to file a cure claim, we hold that United effectively rejected the AT&T executory contracts, as the bankruptcy court held in interpreting its order confirming the plan.

Before confirming a Chapter 11 reorganization plan, a bankruptcy court must review the terms of the proposed plan to ensure that it complies with the applicable provisions of the Code. See 11 U.S.C. § 1129(a)(1). When the court later interprets the plan, it interprets words on which it has already passed judgment. See *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 961 F.2d 1260, 1264 (7th Cir. 1992). We afford that interpretation full deference on review. See *In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994). We overturn the bankruptcy court's interpretation "only if the record shows an abuse of discretion in the interpretation." *Airadigm Communications, Inc. v. FCC (In re Airadigm Communications, Inc.)*, 547 F.3d 763, 768 (7th Cir. 2008), citing *Weber*, 25 F.3d at 416. A bankruptcy court abuses its discretion when its decision is "premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains

no evidence on which the court rationally could have relied." *In re Wiese*, 552 F.3d 584, 588 (7th Cir. 2009), quoting *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004).

The bankruptcy court held that ReGen was not entitled to a cure claim here because United rejected the AT&T executory contracts as permitted by the confirmed reorganization plan. We agree. Article VII of the plan provided:

> The Debtors and Reorganized Debtors reserve the right to reject any executory contract or unexpired lease no later than fifteen (15) days after the later of (i) the Debtors or Reorganized Debtors and the counterparty to such executory contract or unexpired lease agree in writing to the amount of the Cure, or (ii) the entry of a Final Order establishing the Cure.

This explicit reservation of United's right to reject gave it the right to reject the AT&T executory contracts when it did. Neither of the two actions activating the fifteen-day expiration had occurred. United's valid rejection under this provision of the confirmed plan extinguished any right that ReGen would have had to the cure amount.

ReGen argues that the reservation cannot be read to permit the nullification of any "prior assumption of executory contracts previously approved by virtue of entry of the Confirmation Order," and that United therefore may not reject the AT&T contracts that ReGen contends were assumed upon confirmation. We are not persuaded there was any prior assumption.

A trustee or debtor-in-possession may assume any executory contract "subject to the court's approval." See 11 U.S.C. § 365(a). In adding this language to the Code, Congress intended that courts "insure that the trustee's [assumption of the contract] gives the other contracting party the full benefit of his bargain." *In re Superior Toy & Manufacturing Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996), quoting S. Rep. No. 95-989, at 59 (1978); H.R. Rep. No. 95-595, at 348 (1978). The bankruptcy court reviews the debtor's business judgment with respect to the proposed assumption to determine if it would be beneficial or burdensome to assume the executory contract by evaluating whether assumption would serve the reorganization or whether it would take away funds available to other creditors. See *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993); Collier on Bankruptcy ¶ 365.03.

Where a debtor has defaulted on a contract, as here, section 365 also requires that a trustee or debtor-in-possession at the time of assumption (1) cure or provide adequate assurance of prompt cure of that default; (2) compensate or provide adequate assurance of prompt compensation; and, (3) provide adequate assurance of future performance under the contract. See 11 U.S.C. § 365(b)(1). In the Chapter 11 context, the debtor's reorganization plan must provide means for curing or waiving any outstanding defaults. See 11 U.S.C. § 1123(a)(5)(G). At the plan confirmation stage, the court approves those means. At confirmation, the court also approves provisions in the plan, if any, for the assumption, rejection,

or assignment of executory contracts. See 11 U.S.C.
§ 1123(b)(2). Under the terms of United's plan, confirma-
tion constituted just that: approval of the assumption
of executory contracts and a process for curing de-
faults. The plan stated that its confirmation signified
"approval of the proposed treatment" of executory con-
tracts, "determination that the Debtors have exercised
reasonable business judgment in determining whether
to assume or reject each of their executory contracts,"
and "approval of the assumption . . . of the executory
contracts . . . to be assumed under the Plan." By con-
firming the plan, the court approved United's choice to
assume the contracts it listed in the "Assumed Executory
Contracts" exhibit. For the AT&T executory contracts,
where there remained an outstanding default, confirma-
tion of the plan did not, and could not, constitute the act
of assumption itself.

The detailed terms of United's plan make plain that, at
the time of confirmation, United had not yet cured the
outstanding defaults on the AT&T executory contracts
as required by section 365 for assumption. The plan
defined "Cure" in relevant part as the "distribution in
the ordinary course of business following the Effective
Date of Cash, or other such property . . . in an
amount equal to all unpaid monetary obligations,
without interest, or such lesser amount as may be agreed
upon by the parties, under an executory contract . . .
assumed pursuant to Section 365." United did not pay
either AT&T or ReGen for the amount equal to "all
unpaid monetary obligations." Because section 365(b)(1)
requires cure or adequate assurance of prompt cure "at

the time of assumption," both of which were absent here, we conclude that no assumption occurred. To the contrary, United effectively rejected the AT&T contracts.

Section 365(d) provides that the trustee or debtor-in-possession may assume or reject an executory contract at any time before the confirmation of a plan. Some courts have held that this permissive language leaves open the possibility that an executory contract may "ride through" plan confirmation unaffected, neither assumed nor rejected. See *Stumpf v. McGee (In re O'Connor)*, 258 F.3d 392, 404-05 (5th Cir. 2001) (describing the "general agreement" among courts that the "pass-through" or "ride-through" theory applies in Chapter 11 cases where an assumable executory contract is neither assumed nor rejected in the terms of the plan); *Consolidated Gas Electric Light & Power Co. of Baltimore v. United Railways & Electric Co. of Baltimore*, 85 F.2d 799, 805 (4th Cir. 1936) (holding under the former Bankruptcy Act that an executory contract remains in force "until it is rejected, and unless rejected, it passes with other property of the debtor to the reorganized corporation"); *Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.)*, 371 B.R. 412, 424-25 (B.A.P. 9th Cir. 2007) (recognizing "ride-through" option for executory contracts); see generally *Data-Link Systems, Inc. v. Whitcomb & Keller Mortgage Co. (In re Whitcomb & Keller Mortgage Co.)*, 715 F.2d 375, 379 (7th Cir. 1983) (holding that bankruptcy court did not abuse discretion in denying request to require debtor to assume or reject executory contract immediately, before confirmation of plan of reorganization).

The United plan's provision for delayed decisions to assume or reject executory contracts took advantage of this approach. We do not address here the broader issues posed by such "ride-through" arrangements. The critical facts here are that United's plan provided for the "ride-through" possibility and the plan became binding on all creditors upon confirmation. See 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind the debtor, . . . and any creditor"). If ReGen wanted to argue that the "ride-through" possibility violated section 365 or Chapter 11, the time to do it would have been before confirmation, as Sabre did, or in an appeal from the confirmation of the plan. By failing to object to or appeal the plan's confirmation, ReGen lost any opportunity to seek an exemption from or to challenge this provision. See, *e.g.*, *First Union Commercial Corp. v. Nelson, Mullins, Riley, and Scarborough (In re Varat Enterprises, Inc.)*, 81 F.3d 1310, 1317 (4th Cir. 1996) (holding that a creditor's failure to raise objections during the confirmation process precluded their consideration after plan confirmation).

Under the terms of this confirmed reorganization plan, the court approved United's assumption of the executory contracts it chose to list, but assumption of any individual contract would not occur, if at all, unless and until United cured, or provided adequate assurance that it would promptly cure, any outstanding default on it after plan confirmation. United never did so. ReGen therefore never became entitled to payment of the cure amount it seeks.

ReGen argues that United assumed the AT&T executory contracts for four reasons that we find unpersuasive. First, ReGen contends that United actually assumed the AT&T executory contracts because it listed the contracts on the plan's list of "Assumed Contracts" and, according to the plan, that list could not be amended more than thirty days after the plan's confirmation. ReGen contends this prohibition required United to assume all the contracts on the list after thirty days had passed. We disagree with ReGen's reasoning, which would have us ignore other terms in the plan, including the reserved right to make a delayed decision about assumption. As noted above, the plan indicated that its confirmation constituted only approval of United's choice not to reject the contracts listed in its "Assumed Contracts" exhibit. The plan expressly stated that those contracts not included in this exhibit, or elsewhere in the plan, were rejected upon confirmation. But it did not state that those listed in its "Assumed Contracts" exhibit were actually assumed upon confirmation. To the contrary, the plan expressly gave United the opportunity to see a cure amount before making a final decision regarding assumption or rejection of those listed contracts with outstanding defaults.

Second, because the plan sometimes referred to "conditional" assumption of named contracts, ReGen argues that other contracts (like the AT&T contracts) that were not labeled "conditional" were assumed automatically upon the confirmation of the plan. Like the bankruptcy and district courts, we read these provisions differently. The plan mentioned "conditional assumption" only in

the context of the exceptions or exemptions negotiated by specific creditors. The conditions at stake were delineated within the plan, often within the same sentence or paragraph where the term was used. It does not follow that all other contracts were assumed upon confirmation, without any further conditions. Again, ReGen's argument invites us to ignore the provision allowing United to let executory contracts "ride-through" plan confirmation and to make final decisions to assume or reject at later times. The same requirements of section 365 still applied. Following the court's approval of the plan, creditors claiming a default on their executory contracts could submit cure claims, and the debtor had to respond to those claims in order to assume those contracts according to the terms of the plan.

Third, ReGen suggests that section 365 does not require actual payment of a cure claim before assumption of an executory contract. For this assertion, it relies on two cases, both of which we find to be inapposite. ReGen first directs us to *In re Mushroom Transportation Co.*, 78 B.R. 754, 761 (Bankr. E.D. Pa. 1987), in which the bankruptcy court held that "a lease is assumed once court approval is obtained." There, unlike here, the court had issued an order including a cure amount and a payment schedule. Approval of a specific cure amount cannot be compared to approval of a reorganization plan like United's, which makes no mention of specific cure amounts or a cure payment schedule. While ReGen correctly states that the cure payment is not required at the time of assumption, the statute requires at least that the debtor provide adequate assurance of a prompt cure,

an issue we discuss further below. We agree with the bankruptcy court that the terms of United's plan, which lacked the specificity of the order in *In re Mushroom Transportation*, did not meet the statutory requirement.

ReGen also relies on *In re Genuity Inc.*, 323 B.R. 79 (Bankr. S.D.N.Y. 2005), in which the bankruptcy court resolved a dispute about the amount of a creditor's cure claim. The court held that section 365 "clearly and plainly states that in order to assume a contract, a debtor is *required* to first cure all defaults, or provide adequate assurance that it will cure such defaults." 323 B.R. at 84 (emphasis in original). We agree with this reading of the statute. As we held in *In re Superior Toy*:

> The language and intent behind § 365 is decisive. The language of § 365(b)(1) is unequivocal. . . . In drafting § 365(b)(1), Congress went further than requiring that the trustee guarantee payment for future performance under the contract. It required that the trustee guarantee payment of all amounts owed prior to assumption.

78 F.3d at 1174; see also H.R. Rep. No. 95-595, at 347 ("Subsection (b) requires the trustee to cure any default in the contract or lease . . . if there has been a default, before he may assume."); Collier on Bankruptcy ¶ 365.01 (same).

ReGen contends that the *Genuity* court's determination that post-petition assumption "transformed the pre-petition claims of the Carriers once not cured, into new claims arising post-petition," 323 B.R. at 84, citing *Adven-*

*ture Resources, Inc. v. Holland*, 137 F.3d 786, 798 (4th Cir. 1997), demonstrates that a cure claim need not be paid before a debtor may assume an executory contract. On this point, which is at odds with the same court's prior statement that a debtor must "first cure all defaults," we disagree with the *Genuity* court's choice of words, which we believe are confined to its facts.[4] For this statement, the *Genuity* court adopted language from the Fourth Circuit's decision in *Adventure Resources*, a case that addressed an outstanding default on a labor contract. Because the Code treats labor contracts uniquely, see, *e.g.*, 11 U.S.C. § 1113 (providing special treatment for rejection of collective bargaining agreements), we do not find this reasoning applicable here.

Fourth, ReGen claims that the substantial financing available to United was sufficient to provide "adequate assurance" of a prompt cure pursuant to section 365(b)(1)(A) of the Bankruptcy Code. There is no general definition of "adequate assurance" in the Code, nor have we adopted one in this context in our prior cases. We develop its meaning based on the facts and circumstances of each case. See Collier on Bankruptcy ¶ 365.06 (collecting cases in which courts have applied the term pragmatically). In this case, we do not regard United's

---

[4] The debtors in that case contended that portions of their cure payments should be offset due to prior deposits they had made with their creditors. The court ruled that the debtors were not entitled to use their pre-petition deposits to offset their post-petition cure obligation. See 323 B.R. at 84.

substantial financing for its reorganization as adequate assurance of cure for any particular creditor. To do so would undermine the concept of assumption, the statutorily prescribed menu of options granted to the trustee in bankruptcy to decline assumption where it would cause sufficient hardship to the reorganized debtor, and the specific terms of United's plan, which gave United the option to decline to cure after plan confirmation. In the context of a debtor's executory contracts when the debtor seeks to reorganize and continue its business, Chapter 11 presents a tradeoff. The debtor has the right (with court approval) to force a reluctant contracting party left stranded by bankruptcy to continue to do business with it. But if the debtor exercises that right, the debtor must then fulfill its obligations under section 365(b) to cure its earlier defaults. See *Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 10 F.3d 944, 955 (2d Cir. 1993) (section 365 enables a debtor to compel contracting parties to "continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so"), quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985) (per curiam). The Code also enables the contracting party to ask the bankruptcy court to expedite the debtor's final decision regarding assumption or rejection. See 11 U.S.C. § 365(d)(2).

When a party to an executory contract assigns its pre-petition claim (and the related potential claim for a cure), however, the parties' incentives can change dramatically. If the party to the executory contract (here, AT&T) wants to continue to do business with the

debtor, it is free to do so without insisting on either the cure (which would not benefit it at all) or even a prompt and final decision on assumption or rejection (which also would not benefit it at all). As assignee, ReGen could only benefit from an assumption, but it could offer the debtor no incentive to assume, especially as long as AT&T was willing to continue providing service to the debtor post-petition rather than allow the debtor's post-petition business to move to a competitor.

We do not have occasion to decide here whether a timely challenge to United's reservation of the right to postpone the assumption decision would have been successful under section 365. Nevertheless, we can appreciate that such a reservation can make sound business sense in the context of the Code's balancing of the rights of debtors and creditors. The reservation gave the debtor protection from the risk that a creditor's demand for a cure could be more expensive than expected, and it gave the debtor the opportunity to continue to do business with AT&T without making a final decision to assume or reject that would affect ReGen rather than AT&T.

III. *Conclusion*

Claims trading remains a gray area in bankruptcy law that the courts and Congress have left to the parties to negotiate. In this case, a confirmed reorganization plan delineated in clear terms what the debtor was able to do to protect its interests, as well as those of its creditors and customers. Because ReGen held only an assigned

claim, it had nothing to offer United in return for assumption. AT&T had no incentive to insist on an early and final assumption decision or full cure that would provide it with no benefit at all. The confirmed plan clearly authorized United to reject the AT&T contracts after plan confirmation. The bankruptcy court's holding that United did so was well within the court's discretion.

AFFIRMED.