16 U.S. 24 (____)
3 Wheat. 24
McIVER, Assignee, &c.,
v.
KYGER et al.
Supreme Court of United States.

THIS cause was argued by Taylor, for the appellant, and by Swann, for the respondents.
February 10th. MARSHALL, Ch. J., delivered the opinion of the court.
On the 25th day of March 1789, George Kyger and Josiah Watson entered into articles for the exchange of a lot in Alexandria, estimated at $2200, for certain lands in Kentucky, the property of Watson. The lot was to be conveyed to Watson, within eighteen months from the date of the contract; in consideration of which, Watson stipulated to convey to Kyger, such lands, surveyed and patented for him, on the waters of Elkhorn, in Kentucky, as *25 the said Kyger should select, to the extent of $2200, at one dollar per acre, as soon as Kyger should make his election, and furnish a plot and survey of the lands chosen.
On the 23d day of December 1790, a second agreement was entered into, which, after reciting the terms of the first, states that George Kyger had represented to the said Josiah, that the land on Elkhorn was not so valuable as Kyger had supposed; and had proposed to extend the time for surveying *and choosing the lands in Kentucky, and to be allowed to take lands, [*54 to the amount of $2200, on the waters of Elkhorn, or from other lands patented for the said Josiah, in Kentucky, at the intrinsic value which such land bore, at any time between the 25th day of March 1789, and the 25th day of September 1790. On this representation, it was agreed, that the time for choosing, valuing and conveying the lands in Kentucky, should be extended eighteen months; that Kyger might take lands to the stipulated amount, from other tracts, which were specified, at the intrinsic value between the periods before mentioned, taking not less than 700 acres out of any one tract. To ascertain the value of these lands, Thomas Marshall, the elder, was chosen on the part of Watson, and Samuel Buler, on behalf of Kyger; and it was agreed, that if T. Marshall should die or refuse to act, the agent of Watson, in Kentucky, should nominate some other person in his stead. A similar provision was made for supplying the place of Buler. The selection and valuation being thus made, Josiah Watson was to convey the land selected and valued
In the year 1806, Daniel Kyger and others, devisees of George Kyger, party to the said contracts, filed their bill in chancery, in the circuit court for the county of Alexandria, stating the contracts above mentioned; and stating further, that the lot in Alexandria had been duly conveyed; that Thomas Marshall had refused to act as a valuer; that the agent of Watson had nominated John McWhattan in his place; that in the year 1791, the said McWhattan and Buler proceeded to make a valuation, by which the lands on *Elkhorn were valued at $1200, and by which one tract of 1800 [*55 acres on Ravin creek, and one other tract of 1200 acres on Forklick creek, were taken to complete the amount in value, to which Kyger was entitled under the contract. The bill proceeds to state, that this valuation was made known to Josiah Watson, and the conveyances demanded, but from some unknown cause, were not made, until Joseph Watson became bankrupt. That in the year ____ ____ George Kyger departed this life, having first made his will in writing, in which he devised all his real estate in Kentucky to the plaintiffs. In the year 1805, the plaintiffs presented to Josiah Watson an affidavit made by McWhattan and Buler, stating the valuation they had made, and demanded a conveyance. He excused himself, on account of his bankruptcy, but executed a release which recites the agreement and valuation; and that a deed for the lands had been executed by him, which was in the hands of John McIver, the defendant; this release is annexed to the bill. The bill prays that McIver, the defendant, who is the assignee of the bankrupt, may be decreed to convey the lands contained in the valuation of McWhattan and Buler.
The answer admits the contracts, but does not admit that Thomas Marshall declined acting as a valuer, or that McWhattan was appointed in his place. It avers, that the Elkhorn lands were worth the sum at which *26 they were rated in the first contract, and that the second was obtained by the fraudulent representations of Kyger. That the valuation of McWhattan *56] and Buler was not only unauthorized, but *made under an imposition practised on them by Kyger, who prevailed on them to consider the contract as obliging them to value the lands on Elkhorn and Eagle Creek, at no more than one dollar per acre, although they might be worth more. That Josiah Watson never admitted that Kyger was entitled to more than the Elkhorn and Eagle Creek land, which was, therefore, not conveyed to his assignees, though the other lands mentioned in the bill were so conveyed. The defendant consents that a conveyance be decreed for the Elkhorn and Eagle Creek lands, and insists, that the bill as to the residue ought to be dismissed.
Several depositions were taken, which generally estimate the Elkhorn and Eagle Creek land at a dollar or more per acre. One deposition estimates them at 83 cents. Parts of those lands were sold by Kyger, at various prices, whether on credit, or on what credit, is not stated, averaging rather more than one dollar per acre. The deposition of McWhattan was taken by the defendant, and states that the valuers acted under the first agreement; and to the best of his recollection, thought themselves bound to estimate the first-rate land at not more than one dollar per acre.
The court decreed a conveyance for all the lands cantained in the valuation, from which decree the defendant appealed to this court. The appellant contends: 1st. That the second contract ought to be annulled, having been *57] obtained by fraud. If this be against him, then, *2d. The valuation ought to be set aside, and a re-valuation directed.
1. Admitting the lands on Elkhorn and Eagle creek to have been worth, intrinsically, one dollar per acre, a fact not entirely certain, the court is of opinion, that the second contract is not impeachable on that ground. It is not suggested, nor is it to be presumed, that Watson derived his sole knowledge of the value of his lands from the representations made by Kyger. The value fixed in the first contract was probably founded on his previous information, and there is no reason to doubt, that when Kyger was dissatisfied with the stipulated price, Watson was perfectly willing to leave the value to arbitrators mutually chosen by the parties. The court perceives no reason for annulling the second contract.
2. On the second point, the establishment of the valuation made by McWhattan and Buler, there is a total want of testimony. The defendant, in his answer, denies the authority of McWhattan to act as a valuer, and there is no proof to support the allegation of the bill. The ex parte affidavit of McWhattan and Buler, did it even contain any evidence of their authority, is inadmissible; and the recitals of the deed of release, executed by Watson, after he became a bankrupt, are not evidence. The decree, therefore, so far as it establishes this valuation, and orders conveyances to be made in conformity with it, must be reversed, and that valuation set aside and a new one directed.
Decree accordingly.