08-4927-bk
In re Jackson:
Jackson v. Novak

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2009

(Argued: November 19, 2009      Decided: January 22, 2010)

Docket No. 08-4927-bk

_____

IN RE:  RICHARD E. JACKSON
and ANGELA J. SHELTON,

Debtors,

RICHARD E. JACKSON, ANGELA SHELTON,

Appellants,

- v. -

ANTHONY S. NOVAK, Chapter 7 Trustee,

Appellee.

_____

Before:  KEARSE, SACK, and KATZMANN, Circuit Judges.

Appeal from a judgment of the United States District Court for the District of Connecticut, Vanessa L. Bryant, Judge, affirming bankruptcy court order that allowed debtors, pursuant to 11 U.S.C. § 522(d)(11)(E), to exempt from their bankruptcy estate only $16,550 of a settlement payment, representing the portion of the settlement constituting post-petition earnings reasonably necessary for support. See 394 B.R. 8 (D. Conn. 2008), affirming 376 B.R. 75 (Bankr. D. Conn. 2007).

Affirmed.

EDWARD P. JURKIEWICZ, Torrington, Connecticut (Lawrence & Jurkiewicz, Torrington, Connecticut, on the brief), for Appellants.

DEREK V. OATIS, Manchester, Connecticut (Lobo & Novak, Manchester, Connecticut, on the brief), for Appellees.

KEARSE, Circuit Judge:

Section 522(d)(11)(E) of the Bankruptcy Code (or "Code") allows a debtor to exclude from the bankruptcy estate "a payment in compensation of loss of future earnings of the debtor . . . to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." 11 U.S.C. § 522(d)(11)(E). Debtors Richard E. Jackson and Angela J. Shelton ("Debtors") appeal from a judgment of the United States District Court for the District of Connecticut, Vanessa L. Bryant, Judge, affirming an order of the United States Bankruptcy Court for the District of Connecticut, Robert L. Krechevsky, Judge, which held that under § 522(d)(11)(E) Debtors were entitled to exempt from their bankruptcy estate $16,550 of an $83,203 payment received from Jackson's former employer in settlement of a claim of wrongful termination of employment, to wit, the portion of the settlement reflecting only so much of Jackson's lost earnings after the filing of Debtors' bankruptcy petition as were reasonably necessary for the support of Jackson and his dependents, see In re Jackson, 376 B.R. 75 (Bankr. D. Conn. 2007) ("Jackson I"), aff'd, 394 B.R. 8 (D. Conn. 2008) ("Jackson II"). On appeal, Debtors contend that the

bankruptcy and district courts erred (1) in ruling that a § 522(d)(11)(E) exemption is not authorized for earnings related to the prepetition period, and (2) in calculating the amount reasonably necessary for support. Finding no merit in Debtors' contentions, we affirm.

## I.   BACKGROUND

The relevant facts are undisputed and are set out in the opinions of the bankruptcy court in Jackson I, 376 B.R. 75, and the district court in Jackson II, 394 B.R. 8, familiarity with which is assumed.

In 2001, Jackson, a medical doctor and psychiatrist, and his wife Shelton, a Ph.D. in psychology, were employed by a health insurance company in Connecticut (the "Company"). Jackson's job involved reviewing patient records to ensure that their insurance claims were medically appropriate and reviewing appeals of coverage decisions. On March 13, 2003, the Company closed the office in which Jackson and Shelton worked and terminated their employment. Jackson then became an independent contractor. In addition to doing part-time work for several other entities, he agreed to provide services to the Company at an hourly rate, upon its request, until March 17, 2004. The Company stopped sending Jackson work around the end of October 2003; it paid him a total of $98,180 for his services as an independent contractor.

In the meantime, Jackson and Shelton had asserted claims against the Company for wrongful termination of their employment. While employed by the Company, Jackson had complained to it about the manner in which certain health insurance claims were treated. Jackson and Shelton, because their employment was terminated, whereas other employees in their office were reassigned to other Company offices, contended that the Company viewed Jackson as a whistleblower and that the termination of their employment was retaliation for his complaints.

A. The Bankruptcy Proceedings

On October 31, 2003, Jackson and Shelton filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code, see 11 U.S.C. §§ 701-727, reporting assets of $556,113, including property claimed as exempt, and liabilities of $1,326,433.47. On their schedules of income and expenses, they stated that their combined monthly income was $10,332 and that their monthly expenses totaled $14,071. On their schedule of "Personal Property," they included their "Wrongful termination claims" against the Company "for lost future earnings," stating that the value of these claims was "Unknown." Jackson and Shelton also listed these claims in their schedule of "Property Claimed as Exempt" from inclusion in the bankruptcy estate pursuant to § 522(d)(11)(E).

The bankruptcy court authorized the Chapter 7 Trustee to retain Debtors' attorney Judith D. Meyer to pursue their claims

- 4 -

against the Company, and in June 2004 the claims were settled. In the settlement, the Company agreed to pay Jackson $130,000 "to satisfy his claims for future lost earnings" (Settlement Agreement ¶ 1), plus $5,000 for attorney's fees; Shelton agreed to abandon her claims. Meyer stated that the settlement "[e]ssentially . . . 'bought out' [Jackson's] contract through March, 2004," paying him most of what he would have earned in the one-year period following his termination, minus the amount actually paid to him during that period as an independent contractor. (Letter from Judith D. Meyer to Anthony S. Novak dated February 26, 2004 ("Meyer Letter"), at 1.) After deductions for taxes and attorneys' fees, the Trustee received a net settlement payment of $83,203.

In anticipation of the settlement, Jackson and Shelton had amended their bankruptcy schedules to assert that the value of their wrongful termination claims was $135,000 and to claim that all $135,000 was exempt under § 522(d)(11)(E). The Trustee objected to the amended claim of exemption, contending principally that the entire settlement payment was compensation for Debtors' releases of other types of claims. (See Trustee's Brief and Memorandum of Law in Support of Trustee's Objection to Debtors' Second Amended Claim of Exemptions at 9-13, dated August 3, 2007.) Alternatively, the Trustee argued that even if the settlement compensated Debtors for lost wages, some portion reflected past wages, rather than future wages, and that any claim for past wages had become the property of the bankruptcy estate on October 31,

- 5 -

2003, the date on which the Chapter 7 petition was filed, and could not be considered "future" wages. (See, e.g., id. at 12, 14.) He also contended that in light of the facts, inter alia, that "[t]he Debtors retained post-petition a boat and trailer, $6,200.00 in cash, have use of four vehicles and live in a $435,000.00 house in Avon," that "[t]he Debtor-wife holds a one-third interest in 20 acres of land in Tennessee which she claims has little value and no encumbrances," and that "[b]oth Dr. Jackson and Dr. Shelton have testified that they are both currently working without any mental or physical disabilities or restrictions" (id. at 17), no part of the settlement received from the Company was necessary for the support of Debtors or their dependents (see, e.g., id. at 16-17).

After a one-day trial in 2007, the bankruptcy court rejected the Trustee's contention that no part of the settlement payment was exempt under § 522(d)(11)(E). Stating that "the settlement agreement provided compensation for the debtor's loss of earnings for the one-year period following his termination of employment, i.e. from March 14, 2003 through March 13, 2004," Jackson I, 376 B.R. at 79, the court found no support for the Trustee's argument that all or part of the settlement was attributable to anything other than lost earnings. However, the court concluded, that, given the language of § 522(d)(11)(E), only earnings related to the period after the filing of the bankruptcy petition could be exempted:

> Property of the estate, and a debtor's exemption therein, is determined as of the bankruptcy petition

- 6 -

> date. . . . Section 522(d)(11)(E) refers only to post-petition loss of earnings, and the debtor may not exempt that portion of the settlement proceeds that provided compensation of his prepetition loss of earnings.

Jackson I, 376 B.R. at 79

To determine what portion of the net settlement amount of $83,203 reflected post-petition earnings, the court prorated that sum for the 135-day period from October 31, 2003, through March 13, 2004, i.e., the post-petition portion of the one-year period for which the settlement compensated Jackson, and found that the amount attributable to his loss of earnings post-petition was $30,690. See id. In determining how much of that $30,690 was reasonably necessary for the support of Jackson and his dependents during the post-petition period, the court referred to numerous factors, including Debtors' "present and anticipated living expenses," their "present and anticipated income from all sources," their "job skills, training and education" and "ability to earn a living," and their "other assets, including exempt assets." Id. at 80. Noting that, according to their bankruptcy petition schedules, Debtors' monthly expenses ($14,071) exceeded their monthly income ($10,332) by $3,739, the court found that, on an annualized basis, their shortfall totaled $44,868; for the 135 post-petition days, the shortfall was thus ($44,868 ÷ 366 (2004 being a leap year)) x 135, or $16,550. Accordingly, the court found that Jackson and Shelton were entitled to exempt only $16,550 of the settlement proceeds pursuant to § 522(d)(11)(E). See id.

- 7 -

B. The Ruling of the District Court

Debtors appealed to the district court, contending that the bankruptcy court erred (a) in ruling that § 522(d)(11)(E) allows a debtor to exempt only post-petition loss of earnings, and (b) in calculating the amount reasonably necessary for their support. The district court rejected both contentions. In upholding the bankruptcy court's interpretation of § 522(d)(11)(E), the court noted that a "debtor's estate is undeniably created as of the bankruptcy petition date," and that "the estate consists of 'all legal or equitable interests of the debtor in property as of the commencement of the case,'" Jackson II, 394 B.R. at 11 & n.1 (citing 11 U.S.C. § 541(a) and quoting id. § 541(a)(1)). The court stated that

> [s]ection 522(d)(11)(E) specifies an exemption for "a payment in compensation of loss of future earnings of the debtor . . . to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." 11 U.S.C. § 522(d)(11)(E).

> The clear and unambiguous language of the statute creates an estate on the petition date and allows an exemption for a loss of any future earnings after creation of that estate. Jackson and Shelton argue that the term "future" applies to all earnings after the date of their termination, not the date of the petition. Such a reading of the statute is against its clear language. To allow an exemption for earnings prior to the petition date would make the statute retroactive instead of future looking. That reading would render the operative term of the statute--"future"--obsolete and defeat the statute's purpose. Under Jackson and Shelton's interpretation, a debtor could receive a lump sum payment in settlement of a dispute years prior to the petition date and still claim that amount as an exemption even though their entitlement to the asset accrued before the petition was filed. That cannot be correct. In

- 8 -

order for the term "future" to have any meaning, the earnings exempted must account for a period in the future from the date the estate is created.

Jackson II, 394 B.R. at 11.

The district court also found that the bankruptcy court correctly calculated the annualized amount reasonably necessary for Debtors' support and properly determined that, "[p]rorated to account for only post-petition loss of future earning, the proper amount of the exemption is $16,550.00." Id. at 12.

## II. DISCUSSION

On appeal, Jackson and Shelton contend principally that "the word 'future'" in § 522(d)(11)(E) "mean[s] 'earnings after the date of injury or loss'." (Debtors' brief on appeal at 32-33.) They contend that "the exemption statute's only limitation is its requirement that the recovered earnings be reasonably necessary for the support of the debtor and his dependents," not that those earnings be related to the period following the filing of the bankruptcy petition. (Id. at 29.) They also contend that the bankruptcy court, in determining the amount reasonably necessary for their support, miscalculated the amount of their monthly shortfall. Based on these contentions in combination, Debtors argue that they should have been allowed to exempt $77,488.08 as the amount reasonably necessary for their support. Finding no merit in their contentions, we affirm substantially for the reasons stated by the district court in Jackson II.

- 9 -

A.  The Meaning of "Future" in § 522(d)(11)(E)

As an order of the district court functioning in its capacity as an appellate court in a bankruptcy case is subject to plenary review, we "independently review the factual determinations and legal conclusions of the bankruptcy court," In re Momentum Manufacturing Corp., 25 F.3d 1132, 1136 (2d Cir. 1994) (internal quotation marks omitted), accepting the bankruptcy court's factual findings unless they are clearly erroneous, and reviewing its conclusions of law de novo, see, e.g., In re Ames Department Stores, Inc., 582 F.3d 422, 426 (2d Cir. 2009). We see no errors in the decisions in the present case.

As a general matter, in a proceeding under Chapter 7, all property of the bankruptcy estate, except exempt property, is liquidated by a trustee and the resulting cash is distributed to creditors. See generally 11 U.S.C. §§ 704(a)(1), 726. Under this Chapter, in the absence of specified circumstances precluding a discharge, debtors who are individuals are released from liability for most prepetition debts. See id. § 727. Certain property may be exempted from the estate and thereby preserved for the debtor's own use after his discharge from bankruptcy. See id. § 522.

The commencement of a bankruptcy proceeding "creates [the bankruptcy] estate." 11 U.S.C. § 541(a). The bankruptcy estate encompasses, with few exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the

- 10 -

case," id. § 541(a)(1), "wherever located and by whomever held," id. § 541(a). Such interests include causes of action possessed by the debtor at the time of filing. See, e.g., Seward v. Devine, 888 F.2d 957, 963 (2d Cir. 1989).

Property that the debtor neither owns nor becomes entitled to until after the filing of the Chapter 7 petition is generally not property of the estate. For example, "earnings from services performed by an individual debtor after the commencement of the case" are excluded from the estate. 11 U.S.C. § 541(a)(6). "Post-petition property will become property of the estate only if it is 'sufficiently rooted in the pre-bankruptcy past.'" Chartschlaa v. Nationwide Mutual Insurance Co., 538 F.3d 116, 122 (2d Cir. 2008) (quoting Segal v. Rochelle, 382 U.S. 375, 380 (1966), which was interpreting the Bankruptcy Act of 1898)); see, e.g., In re Bell, 225 F.3d 203, 215 (2d Cir. 2000) ("[P]roperty acquired post-petition by the debtor does not enter the estate."). Wages for services rendered by the debtor prior to the bankruptcy filing are rooted in his pre-bankruptcy past and become property of the estate even if paid subsequent to his bankruptcy filing. See, e.g., In re Irish, 311 B.R. 63, 66 (B.A.P. 8th Cir. 2004) ("Wages that are earned pre-petition but that have not yet been paid are property of the estate. 11 U.S.C. § 541(a)(1) . . . .").

Section 522(b) of the Code provides, with exceptions not pertinent here, that "[n]otwithstanding section 541"--which states that the estate encompasses all property of the debtor at the time of the filing of the bankruptcy petition--"an individual debtor

may exempt from property of the estate . . . property that is specified under subsection (d)," 11 U.S.C. §§ 522(b)(1) and (2). Subsection (d) of § 522 provides, in pertinent part, as follows:

> (d) The following property may be exempted under subsection (b)(2) of this section:
>
> . . . .
>
> (11) The debtor's right to receive, or property that is traceable to--
>
> . . . .
>
> (E) a payment in compensation of loss of <u>future earnings</u> of the debtor . . . to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

11 U.S.C. § 522(d)(11)(E) (emphasis added). In sum, § 541 was designed to bring "anything of value that the debtors have into the estate," and § 522 was designed to "permit an individual debtor to take out of the estate that property that is necessary for a fresh start and for the support of himself and his dependents." H.R. Rep. No. 95-595, at 176 (1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5963, 6136.

Given the design and goals of these provisions of the Code, we conclude that the bankruptcy and district courts properly interpreted "future" in § 522(d)(11)(E) as looking forward from the date of the bankruptcy filing, not from some prior point in time, and hence correctly interpreted "loss of future earnings" in that section as referring to lost earnings for post-petition periods and not for periods prior to the filing of the bankruptcy petition.

- 12 -

In support of the contrary conclusion, Debtors cite three bankruptcy court cases, none of which discusses the scope of § 522(d)(11)(E)'s use of the word "future." See In re Lowery, No. 05-13536, 2007 Bankr. LEXIS 3729 (Bankr. N.D. Ga. Sept. 24, 2007) (determining that state statute paralleling § 522(d)(11)(E) encompasses the lost future earnings portion of a tort award for personal injuries); In re Claude, 206 B.R. 374, 381 (Bankr. W.D. Pa. 1997) (noting that an evidentiary hearing would be necessary as the court was "unable to determine from the record how much of the [tort damages] award may have been for loss of earnings"); and In re Bova, 205 B.R. 467, 477 (Bankr. E.D. Pa. 1997) (interpreting a settlement with respect to an insurance policy that "provided coverage for the insured's 'work loss' and 'income loss expenses' incurred over the insured's lifetime"). In any event, to the extent that any of the rulings in these cases may have been based on the assumption that "future earnings" in § 522(d)(11)(E) encompasses earnings for services attributable to prepetition periods, we are not bound by them and we disagree with such an assumption.

Debtors' contention that all of Jackson's earnings following the termination of his employment may be exempted under § 522(d)(11)(E) because they would be termed future earnings under tort law is unpersuasive given the different purposes of tort law and bankruptcy law. See generally Segal, 382 U.S. at 379 (regardless of classifications for other purposes, the bankruptcy laws' "own purposes must ultimately govern" the meaning of

- 13 -

"property" for bankruptcy purposes). Debtors' contention that "future earnings" means simply any earnings for a period following the termination of their employment, even for a period prior to their filing for bankruptcy, is inconsistent with the treatment of earnings provided for in § 541(a)(6) which, as noted above, excludes from the estate only such earnings as were for "services performed by an individual debtor <u>after the commencement of the case</u>" (emphasis added).

Acceptance of Debtors' interpretation of § 522(d)(11)(E) would also lead to results that we think would be absurd. Thus, Debtors in their brief on appeal argued that § 522(d)(11)(E) allows a debtor "to exempt compensation for lost earnings which accrued years prior to the petition date" (Debtors' brief on appeal at 32), and at oral argument took the position that an unspent portion of a "payment in compensation of loss of future earnings that was received 30 years before the filing of a petition" could be claimed as exempt. Such an interpretation, permitting the discharge of individual debtors' prepetition debts while allowing them to exempt from the estate moneys earned while incurring those debts, would create a windfall for the debtor, albeit limited by the reasonably-necessary-for-support restriction. We cannot conclude that this is what Congress intended. We affirm the rulings of the district and bankruptcy courts that "future earnings" in § 522(d)(11)(E) does not encompass earnings attributable to the period prior to the debtor's filing of the bankruptcy petition.

- 14 -

B.    The Amount of the Settlement Representing Post-Petition
      Earnings "Reasonably Necessary for . . . Support"

The bankruptcy court found that the settlement payment made by the Company was compensation for Jackson's loss of earnings for the year March 14, 2003, through March 13, 2004. This finding of fact is supported by the record (see, e.g., Meyer Letter at 1 (the Company "essentially . . . 'bought out' Jackson's contract through March, 2004")), and is not clearly erroneous. Nor are we persuaded the court erred in finding that $30,690 of the settlement was attributable to the post-petition period, which it calculated by prorating the $83,203, received by the Trustee with respect to that year, for the 135 post-petition days from October 31, 2003, through March 13, 2004.

Finally, as described in Part I.A. above, in determining what portion of the $30,690 in future earnings was "reasonably necessary for the support" of Jackson and his dependents, 11 U.S.C. § 522(d)(11)(E), the bankruptcy court considered the appropriate factors as to Debtors' needs, including their present and anticipated expenses, their assets, their "present and anticipated income from all sources," their training and education, and their "ability to earn a living," noting that "[t]he debtor and his wife are well-educated and their lack of employment is likely to be short-lived", Jackson I, 376 B.R. at 80.    Using the figures supplied by Debtors' on their monthly income and expense schedules, the court subtracted $10,332 (income) from $14,071 (expenses) and found that Debtors' expenses

exceeded their income by $3,739 per month; for the 135 post-petition days, that shortfall added up to $16,550. We see no error in the factors considered by the court or in its arithmetic calculation.

In contending that the "reasonably necessary" amount was miscalculated, Debtors argue that, instead of using the $10,332 monthly income figure reported on their income schedule--which included the $98,180 that Jackson had earned from the Company from March through October 2003--the court should have attributed the $98,180 not to the months in which it was earned but rather to the entire year covered by the Settlement Agreement. If spread over 12 months, instead of the approximately 7½ months in which it was earned, Debtors argue that their net monthly income was not $10,332 but $7,613, and that their monthly shortfall was thus not $3,739 but $6,457.34. If the bankruptcy court had used the latter figure with respect to the 135 post-petition days, Debtors would have been entitled to exempt $28,581.67, rather than $16,550.

In support of the argument that the $98,180 earned by Jackson for services he rendered prior to the bankruptcy filing should have been divided by 12 rather than by the number of months in which that sum was earned, Debtors state that the bankruptcy court was required to consider Debtors' "actual income over the entire one-year settlement period." (Debtors' brief on appeal at 41.) Even assuming this is so, Debtors provided the court with no evidence from which to determine that "actual income."

- 16 -

While acknowledging that Jackson "testified that he was doing other work part-time" (id. at 41 n.16), Debtors state that "there is no evidence in the record which reflects the amount he earned" (id.).  Given the absence of such evidence, we cannot say that it was error for the court to calculate Debtors' monthly shortfall by relying on the dollar amount stated by Debtors in the income schedule they filed in the bankruptcy proceeding.

## CONCLUSION

We have considered all of Debtors' contentions on this appeal and have found them to be without merit.  The judgment of the district court, affirming the decision of the bankruptcy court, is affirmed.