21-2050-bk
*In re: George Washington Bridge*

In the
United States Court of Appeals
for the Second Circuit

_____

August Term, 2022

No. 21-2050-bk

IN RE: GEORGE WASHINGTON BRIDGE BUS STATION DEVELOPMENT VENTURE LLC,

*Debtor.*

TUTOR PERINI BUILDING CORP.,

*Plaintiff-Appellant,*

v.

NEW YORK CITY REGIONAL CENTER GEORGE WASHINGTON BRIDGE BUS STATION AND INFRASTRUCTURE DEVELOPMENT FUND, LLC, PORT AUTHORITY OF NEW YORK AND NEW JERSEY, GSNMF SUBCDE 12 LLC, UPPER MANHATTAN EMPOWERMENT ZONE DEVELOPMENT CORPORATION, DVCI CDE XIII, LLC, LIIF SUBCDE XXVI, LLC, GEORGE WASHINGTON BRIDGE BUS STATION DEVELOPMENT VENTURE LLC,

*Defendants-Appellees,*

KENNETH P. SILVERMAN, Chapter 7 Trustee of the Bankruptcy Estate of George Washington Bridge Bus Station Development Venture LLC,

*Trustee-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of New York
No. 20-cv-7433

(Argued October 27, 2022; Decided April 10, 2023)

Before:     WALKER, LEE, and ROBINSON, *Circuit Judges*.

Plaintiff-Appellant Tutor Perini Building Corp. appeals from an order of the United States District Court for the Southern District of New York (Rakoff, *J.*) affirming an order of the United States Bankruptcy Court for the Southern District of New York (Chapman, *Bankr. J.*), which held that Plaintiff-Appellant may not use 11 U.S.C. § 365(b)(1)(A) to assert a "cure claim" against the Trustee-Appellee for the Trustee-Appellee's assumption of an unexpired lease to which Plaintiff-Appellant was neither a party nor a third-party beneficiary.  We hold that a creditor who seeks to assert a "cure claim" under § 365(b)(1)(A) must have a contractual right to payment under the assumed executory contract or unexpired lease in question, and we agree that Plaintiff-Appellant is not a third-party beneficiary of the assumed lease.  We therefore **AFFIRM**.

JEFFREY K. GARFINKLE, Buchalter, P.C., Irvine, California (Robert Nida, Nida & Romyn, P.C., Los Angeles, California, *on the brief*), *for Plaintiff-Appellant Tutor Perini Building Corp.*

ANTHONY C. ACAMPORA, Silverman Acampora LLP, Jericho, New York, *for Trustee-Appellee Kenneth P. Silverman.*

2

EUNICE C. LEE, *Circuit Judge*:

Generally, when a debtor declares bankruptcy, the debtor's creditors line up to be paid in the order of priority provided by the Bankruptcy Code—for example, secured creditors are normally paid in full before unsecured creditors have any right to payment. *See* 11 U.S.C. § 1129(b). Thus, if a general contractor seeks unpaid fees from a bankrupt real estate developer, but his contract with the developer renders him an unsecured creditor, then the general contractor only gets paid to the extent that there is money left after all creditors with higher priority get paid. But the Bankruptcy Code contains exceptions to the normal rules of priority, and Plaintiff-Appellant Tutor Perini Building Corp. ("Tutor Perini"), a general contractor and would-be unsecured creditor of the debtor in this case, attempts to rely upon one of these exceptions to get priority on its claim: 11 U.S.C. § 365(b)(1)(A).

Under § 365, a debtor undergoing reorganization may not assume "an executory contract or unexpired lease" in which there "has been a default" until the debtor "cures" the default. In other words, § 365 obligates the debtor to cure any existing defaults before the debtor can continue to benefit from the contract. If a default resulted from the debtor's failure to pay money due under the contract, then curing the default means making payment. This is good for the creditor on

3

the other side of the contract in question, because the creditor's claims get fully paid at the moment the debtor assumes the contract. This effectively lets the creditor cut to the front of the priority line, rather than waiting for payment according to the normal order of priority.

In this action, Tutor Perini believes that § 365 applies to its claims for recovery against the debtor. As part of its bankruptcy proceeding, the debtor here assumed an unexpired lease it had entered into with the owner of a property to be developed. The debtor hired Tutor Perini to be the general contractor for the property. Tutor Perini now points to what it contends is a default in the lease between the debtor/developer and the property owner: The lease says that the debtor has to pay anyone hired to work on the development. Tutor Perini, whom the debtor hired, has not been paid in full under its own contract with the debtor—after all, that is why it is waiting in line to recover from the developer's bankruptcy estate. Thus, Tutor Perini believes § 365(b) entitles it to immediate payment. Even though Tutor Perini is not a party to the lease, it argues that § 365 does not say one has to be a contracting party to identify a default and seek priority of payment.

This appeal calls for us to decide whether Tutor Perini is right, *i.e.*, whether, as a non-party to the lease, it can bring a "cure claim" under 11 U.S.C. §

4

365(b)(1)(A). We hold that it cannot. More specifically, based on principles of Bankruptcy Code construction, we hold that § 365(b)(1)(A) does not provide a right of priority to a creditor who seeks payment from a debtor under one contract but whose assertion of uncured default arises from a separate contract in which the creditor has no contractual rights. Additionally, we hold that Tutor Perini is not a third-party beneficiary entitled to recover under the contract with the purported uncured default.

Accordingly, we **AFFIRM** the judgment of the district court.

# I. BACKGROUND

The bankrupt debtor in this action, George Washington Bridge Bus Station Development Venture LLC ("Debtor"), is the redeveloper of a bus station of the Port Authority of New York and New Jersey (the "Port Authority") located at the Manhattan end of the George Washington Bridge. In July of 2011, Debtor and the Port Authority entered into an agreement (the "Ground Lease") providing that Debtor was to manage and oversee the approximately $183 million redevelopment project, and that, in return, Debtor would receive a 99-year lease to operate and maintain the approximately 129,000 square foot retail mall that would be erected at the bus station site. The Port Authority was to contribute approximately $52

5

million of the project's costs, made in monthly installments, and the remainder of the funds would come from pre-petition lenders who made loans to Debtor secured by Debtor's interest in the Ground Lease.

As relevant here, the Ground Lease provides that Debtor was to hire contractors and subcontractors, including a general contractor, subject to the Port Authority's approval.  Section 5.7(c) of the Ground Lease states:

> Except as provided in Section 5.4 hereof, the Port Authority shall have no obligations or liabilities in connection with the performance of any Construction Work or the contracts for the performance thereof entered into by [Debtor.]  Provided that the Port Authority shall pay the amounts due and owing under Section 5.4 hereof, [Debtor] shall pay all claims lawfully made against it by its contractors, subcontractors, material-men and workmen and all claims lawfully made against it by other third persons arising out of or in connection with or because of the performance of the Construction Work and shall cause its contractors and subcontractors to pay all such claims lawfully made against them.  The obligations assumed by [Debtor] . . . in this [Ground Lease] shall not be limited, affected, impaired or

in any manner modified by [among other things] contracts covering the Construction Work.

App'x at 97. Section 5.4, in turn, provides that "the Port Authority shall pay to [Debtor] a fixed price," *id.* at 89, of approximately $52 million towards project costs and sets forth procedures by which payments were to be made, *id.* at 89–93.[1]

In June of 2013, nearly two years after Debtor and the Port Authority entered into the Ground Lease, Debtor and Tutor Perini entered into an agreement for Tutor Perini to act as the general contractor for the redevelopment project (the "Construction Contract"). However, Debtor and Tutor Perini found themselves in various disputes over the bills Tutor Perini submitted for payment pursuant to the Construction Contract, and Tutor Perini missed the deadline for project completion. Subsequently, in February of 2015, Debtor filed an arbitration proceeding against Tutor Perini with the American Arbitration Association over the disputed bills Tutor Perini submitted. Tutor Perini counterclaimed and

---

[1] Additionally, Section 5.1.2(b) of the Ground Lease states that, "All . . . Construction Work shall be performed at [Debtor's] sole cost and expense, subject to Section 5.4 hereof." App'x at 87 (underlining removed).

7

presented evidence in support of approximately $113 million in damages for Debtor's failure to pay.[2]

In October of 2019, Debtor filed for Chapter 11 bankruptcy, which stayed the arbitration with Tutor Perini. Through the bankruptcy process, Debtor sought to sell substantially all of its assets, which most notably meant selling its rights in the Ground Lease. This is where § 365 of the Bankruptcy Code comes into play. As will be explained in more detail below, before Debtor could sell the Ground

---

[2] Separately, in July of 2018, Tutor Perini sued the Port Authority in New York State Supreme Court, alleging that it was in "the functional equivalent of privity" with the Port Authority, despite Tutor Perini's not being a party to the Ground Lease. App'x at 569. On July 5, 2019, the New York Supreme Court denied the Port Authority's motion to dismiss. On February 18, 2021, the Appellate Division unanimously reversed that decision and granted the Port Authority's motion to dismiss Tutor Perini's breach of contract claim brought under the Ground Lease, reasoning that Tutor Perini is not in privity with the Port Authority. *Tutor Perini Bldg. Corp. v. Port Auth. of N.Y. & N.J.*, 191 A.D.3d 569, 569–71 (1st Dep't 2021). Tutor Perini was allowed to proceed on its claim against the Port Authority for unjust enrichment. *Id.* at 571.

Additionally, in January of 2020, Tutor Perini filed a separate action in the Southern District of New York against various parties connected to the redevelopment project. *See Tutor Perini Bldg. Corp. v. N.Y.C. Reg'l Ctr., LLC et al.*, 1:20-cv-00731-PAE, ECF No. 1 (S.D.N.Y. Jan. 27, 2020). The action was dismissed without prejudice via stipulation and order on July 14, 2021. *Id.* at ECF No. 137.

Lease, it needed to satisfy the Bankruptcy Code's requirement that it "cure[]" any default in the Ground Lease. *See* 11 U.S.C. § 365(b)(1)(A).

Accordingly, Tutor Perini objected to Debtor's selling the Ground Lease. It argued to the bankruptcy court that, because Debtor had yet to pay Tutor Perini's approximately $113 million claim under the Construction Contract, Debtor had failed to cure a default under Section 5.7(c) of the Ground Lease, and thus § 365 did not allow Debtor to sell the Ground Lease until Tutor Perini's "cure claim" was paid. Separately, the Port Authority asserted its own cure claim against the Debtor under Section 5.7(c) of the Ground Lease, but Debtor and Port Authority ultimately reached a settlement. This left only Tutor Perini's purported cure claim under § 365(b).

After briefing and oral argument, the bankruptcy court (Chapman, *Bankr. J.*) approved the settlement with the Port Authority on July 14, 2020, and held that Tutor Perini could not reframe Debtor's alleged failure to pay it under the Construction Contract as a default under the Ground Lease that vested Tutor Perini with the right to pursue a cure claim under § 365(b). It rejected the two arguments that Tutor Perini made to it: first, that it did not need contractual rights in the Ground Lease because "Section 365(b)(1)(A) contains no textual limitation

9

on who may assert a cure claim," App'x at 585; and second, in the alternative, that it was a third-party beneficiary of the Ground Lease entitled to sue under it. *Id.* at 584–85.

Tutor Perini appealed to the United States District Court for the Southern District of New York, and the district court affirmed the bankruptcy court's order. *Tutor Perini Building Corp. v. N.Y.C. Reg'l Ctr. George Washington Bridge Bus Station and Infrastructure Dev. Fund LLC* (*In re George Washington Bridge Bus Station Dev. Venture LLC*) ("*In re GWB*"), 2021 WL 3403590 (S.D.N.Y. Aug. 4, 2021) (Rakoff, *J.*). The district court reasoned that Tutor Perini could not be a third-party beneficiary of the Ground Lease because, among other things, the Ground Lease specifically named several third-party beneficiaries, and none of them were Tutor Perini. *Id.* at *4. As to Tutor Perini's arguments about the lack of textual limits in § 365(b)(1)(A), the district court held that it is generally "only the non-debtor party to an assumed executory contract"—in this case, the Port Authority—who can assert a "cure claim under § 365(b)," and that Tutor Perini's position—that "an economic interest in the [G]round [L]ease short of" an actual contractual right can

10

justify a cure claim—would "turn the Bankruptcy Code's priority scheme on its head." *Id.* at *5–6 (internal quotation marks omitted).

This appeal followed.

## II. STANDARD OF REVIEW

In an appeal from a district court's review of a bankruptcy court decision, this Court will "independently review the bankruptcy court's decision, 'accepting the bankruptcy court's factual findings unless they are clearly erroneous and reviewing its conclusions of law *de novo*.'" *Law Offices of Francis J. O'Reilly, Esq. v. Selene Fin., L.P. (In re DiBattista)*, 33 F.4th 698, 702 (2d Cir. 2022) (alteration marks omitted) (quoting *Jackson v. Novak (In re Jackson)*, 593 F.3d 171, 176 (2d Cir. 2010)).

## III. DISCUSSION

The main issue in this appeal involves the bounds of 11 U.S.C. § 365(b)(1)(A), and specifically whether it allows a creditor in Tutor Perini's position to assert a "cure claim," which entitles a creditor to the highest priority of payment under the Bankruptcy Code, even if the creditor has no contractual rights in the contract or lease being assumed. We also resolve Tutor Perini's alternative arguments that it does in fact have rights under the Ground Lease, including as a third-party beneficiary.

## A. Assumption of Executory Contracts and Unexpired Leases and the Right of Cure

To understand the main issue on appeal, one must first understand the Bankruptcy Code's rules for assuming an "executory contract or unexpired lease," § 365(a),[3] and how such assumption affects the priority of claims.

"[C]ontract assumption is an important re-organizational tool under Chapter 11 because it allows a trustee, or a debtor in possession, 'to go through the inventory of executory contracts and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject.'" *ReGen Capital I, Inc. v. Halperin* (*In re U.S. Wireless Data, Inc.*), 547 F.3d 484, 488 (2d Cir. 2008) (alteration marks and internal citation omitted) (quoting *Med. Malpractice Ins. Ass'n v. Hirsch* (*In re Lavigne*), 114 F.3d 379, 386 (2d Cir. 1997)). When a debtor assumes an executory contract, it "effectively . . . compel[s] non-debtor parties to [such] contracts 'to continue to do business'" with the debtor, even though the debtor's having filed for bankruptcy "'might otherwise make [non-debtor contracting

---

[3] By an "executory contract," we mean one where "the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *ReGen Capital I, Inc. v. Halperin* (*In re U.S. Wireless Data, Inc.*), 547 F.3d 484, 488 n.1 (2d Cir. 2008) (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973)).

parties] reluctant to do so.'" *Id.* (quoting *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.*), 10 F.3d 994, 955 (2d Cir. 1993)).

However, "a debtor cannot assume [an executory] contract unless the debtor satisfies several statutory conditions designed to make the non-debtor contracting party whole." *Id.* at 489 (citing *E. Air Lines, Inc. v. Ins. Co. of the State of Pa. (In re Ionosphere Clubs, Inc.*), 85 F.3d 992, 999 (2d Cir. 1996)). "Specifically, a debtor must (1) cure the default, or provide adequate assurance that it will promptly cure it; (2) compensate, or provide adequate assurance that the trustee will promptly compensate, the non-debtor party to the contract for any actual monetary loss caused by the debtor's default; and (3) provide adequate assurance of future performance under the contract." *Id.* (citing 11 U.S.C. § 365(b)(1)(A)-(C)).

Importantly, because a debtor must "cure" a default under § 365(b)(1)(A) before assuming an executory contract, "[c]laims arising under contracts or leases so assumed are afforded administrative priority" under Sections 503 and 507 of the Bankruptcy Code. *See In re Chateaugay Corp.*, 10 F.3d at 952, 954; *see also American Anthrocite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119, 124 (2d Cir. 1960) (explaining, in the era prior to § 365's enactment, the "equitable right" to "first priority" that applied to claims under "an executory

13

contract" that "the trustee or debtor in possession elect[ed] to assume" (internal quotation marks omitted)). In other words, when a creditor of a debtor has a claim arising from a default in an executory contract the debtor wishes to assume, that creditor's claim must be paid 100 cents on the dollar before the debtor may assume it, even if that creditor would otherwise "receive the priority provided [to] general unsecured creditors." *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (citing 11 U.S.C. §§ 502(g) & 507).

**B. Requirements for Asserting a Section 365(b)(1) Cure Claim**

Tutor Perini argues that, although it is not a party to the Ground Lease, it may assert a cure claim via § 365(b)(1)(A) because the text of § 365(b)(1)(A) "does not limit who may assert a cure claim." Appellant's Br. at 23. Specifically, the text does not state that only a party to the assumed contract may do so. Thus, under Tutor Perini's view, it is entitled to full recovery on its claims under the Construction Contract because Section 5.7(c) of the Ground Lease requires Debtor to pay the amounts due to all those hired to work on the redevelopment project.

We disagree with Tutor Perini's reading of the statute, and we hold that, to receive priority under § 365(b)(1)(A), a creditor asserting a default must have some right to pursue a breach of contract claim under the executory contract or

14

unexpired lease a debtor assumes under § 365(a). *See In re Wireless Data*, 547 F.3d at 495 (explaining that "a cure . . . is a claim against the [d]ebtor *under an executory contract* that arose prior to the commencement of the Chapter 11 case and that the [d]ebtor ha[s] in fact assumed" (emphasis added) (internal quotation marks, alteration marks, and citations omitted)). We reach this holding for two main reasons.

First, although Tutor Perini is correct that § 365(b) does not spell out which parties may raise a default in an assumed contract or lease to seek priority on their claims, it is a well-established rule of Bankruptcy Code construction that, "[b]ecause the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed." *Supplee v. Bethlehem Steel Corp.* (*In re Bethlehem Steel Corp.*), 479 F.3d 167, 172 (2d Cir. 2007) (quoting *Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir. 1986)). "[I]f one claimant is to be preferred over others, the purpose should be clear from the statute." *Nathanson v. N.L.R.B.*, 344 U.S. 25, 29 (1952).

As demonstrated from the above, reading § 365(b)'s grant of priority as cabined to non-debtors with rights under an assumed contract furthers a clear

15

statutory purpose: It "make[s] the non-debtor contracting party whole" by guaranteeing that party the benefit of its bargain before it must continue to perform under the contract for the debtor's benefit. *In re Wireless Data*, 547 F.3d at 489. We have previously said that "Congress's intent in imposing these conditions on the ability of the debtor to assume the contract was to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance." *In re Ionosphere Clubs*, 85 F.3d at 999 (internal quotation marks omitted). Other Circuits have read § 365 as similarly premised on an intent to protect the non-debtor parties to contracts. *See, e.g.*, *Century Indemnity Co. v. Nat'l Gypsum Co.* (*In re Nat'l Gypsum Co.*), 208 F.3d 498, 506 (5th Cir. 2000) ("[T]he debtor party must take full account of the cost to cure all existing defaults owed to the non-debtor party when assessing whether the contract is beneficial to the estate."); *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996) ("Section 365 was clearly intended to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance."). That intent is effected where an actual party to the Ground Lease—here, the Port Authority—seeks cure claim treatment before Debtor's trustee assumes the Ground Lease.

By contrast, we do not see how it furthers any statutory purpose to read

16

§ 365(b) as granting administrative priority to someone whose claims against the debtor do not arise from a contract assumed under § 365(a). Tutor Perini argues that disallowing a non-party to a contract to assert a cure claim under § 365(b)(1)(A) would "provide the debtor with an unjustified windfall" since the debtor would assume the contract without "satisfy[ing] all defaulted obligations under the subject contract." Appellant's Br. at 23. But we think it is the non-party seeking payment under a contract who would receive an unjustified windfall. A non-party to a contract assumed under § 365(a) has no relevant bargain with the debtor and owes the debtor no performance under that contract. Affording that non-party administrative priority would let it cut the line and stand in front of even secured creditors in exchange for nothing.[4]

Second, by reading § 365(b) as providing priority only to those with claims under a contract assumed via § 365(a), we make the most sense of § 365 and the

---

[4] This understanding—that the Bankruptcy Code generally grants administrative priority in exchange for something that benefits a debtor's reorganization—is consistent with how we have construed a creditor's entitlement to payment of an administrative expense under §§ 503(b)(1)(A) and 507(a)(1): "An expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession, and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *In re Bethlehem Steel*, 479 F.3d at 172 (alteration marks omitted) (quoting *McFarlin's*, 789 F.2d at 101).

"Bankruptcy Code as a whole." *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 183 (2d Cir. 2005) (citing *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 560 (3d Cir. 2003)); *see also Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) ("[W]hen construing the plain text of a statutory enactment[,] . . . . we attempt to ascertain how a reasonable reader would understand the statutory text, considered as a whole." (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997))).

For one thing, Tutor Perini's argument urges us to infer an expansive priority right under § 365(b)(1)(A) based on "the lack of a textual limitation," *i.e.*, statutory silence. Appellant's Br. at 25. But statutory silence in this context generally cuts the other way, for, as the Supreme Court has explained, "[t]he importance of the priority system leads us to expect more than simple statutory silence if, and when, Congress were to intend a major departure." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 465 (2017).

For another thing, other portions of § 365 strongly suggest that the statute provides rules of priority that govern the claims brought by creditors who seek to recover based on their rights in a contract that is assumed or rejected, and not as a means of modifying the rules of priority for anyone else. *See CSX Transp., Inc. v.*

18

*Island Rail Terminal, Inc.*, 879 F.3d 462, 470–71 (2d Cir. 2018) ("The meaning of a statute can be understood 'in context with and by reference to the whole statutory scheme by appreciating how sections relate to one another.'" (quoting *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002))). For example, § 365(b)(1)(B), which details the trustee's additional responsibilities with regard to assumed executory contracts, specifically speaks to the rights of creditors who are *parties* to a contract: It says that "a party other than the debtor to [the relevant] contract or lease" has a priority right to be "compensate[d] . . . for any actual pecuniary loss . . . resulting from [a] default." *See also In re GWB*, 2021 WL 3403590, at *6 (district court observing the same). Section 365(g), regarding the rejection of an executory contract, also speaks to the priority rights of creditors with claims actually arising under a contract: It provides that, absent exceptions not relevant here, "the rejection [by the debtor or trustee] of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease." 11 U.S.C. § 365(g). The resulting "[breach of contract] claim [by the non-debtor party to the contract] is treated as a pre-petition unsecured claim." *In re Lavigne*, 114 F.3d at 389; *see Adelphia Bus. Sols., Inc. v. Abnos*, 482 F.3d 602, 606 (2d Cir. 2007) ("Rejection" allows a non-debtor contracting party to "seek allowance of its claims . . . with the

same priority as a general unsecured creditor."). Thus, in both of these subsections of § 365, Congress clearly contemplated the rules of priority for creditors with claims actually arising under contracts, and not just for any party who claims some tangential interest in a contract short of a legal right to sue under it. It is thus hard to fathom that the same Congress that wrote these subsections would have intended a far broader view of priority in § 365(b)(1)(A) alone.

Particularly in light of § 365(g)'s rule regarding the low-priority treatment of creditors alleging a breach of a rejected executory contract, Tutor Perini's position regarding § 365(b)(1)(A) makes little sense when one considers a case, like this one, where a creditor who is not a party to an assumed contract has its own independent contract with a debtor. Recall that Tutor Perini has its own Construction Contract with Debtor—indeed, Tutor Perini told the bankruptcy court that it had "claims" against Debtor "under the Construction Contract," App'x at 12, and that the damages Tutor Perini seeks "aris[e] from the Debtor's breach of its [C]onstruction [C]ontract with Tutor Perini," App'x at 11. Assume, hypothetically, that the Construction Contract is an executory contract within the meaning of § 365(a). If Debtor were to reject the Construction Contract under § 365(a), then § 365(g) would treat this as a breach of the Construction Contract and

provide Tutor Perini with "a pre-petition unsecured claim," *In re Lavigne*, 114 F.3d at 389, meaning Tutor Perini would be disabled from bringing a cure claim based on the Construction Contract. And yet, if we were to accept Tutor Perini's interpretation of § 365(b)(1)(A), § 365(g) would become irrelevant, as Debtor would still have to pay Tutor Perini's Construction Contract claim as if it had administrative priority. It is difficult to believe that this is what Congress intended. *Cf. Czyzewski*, 580 U.S. at 466 ("Congress does not, one might say, hide elephants in mouseholes." (alteration marks omitted) (quoting *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001))).[5]

For the above reasons, we conclude that the Bankruptcy Code does not entitle Tutor Perini, a non-party to the Ground Lease, to assert a cure claim under § 365(b)(1)(A) based on a purported default under that lease.

---

[5] The cases Tutor Perini relies on in suggesting that non-parties to a contract can assert cure claims under § 365(b)(1)(A) are readily distinguishable. Each of those cases involved a debtor's former landlord who had transferred to a new landlord its interests in the lease while specifically retaining its cure rights against the debtor/(former) lessee. *See ECPG (Peoria) Assocs. Ltd. P'shp. v. Bldg. Block Child Care Ctrs., Inc.* (*In re Bldg. Block Child Care Ctrs., Inc.*), 234 B.R. 762, 766 (B.A.P. 9th Cir. 1999); *In re USN Commc'ns, Inc.*, 1999 WL 33496079, at *3–4 (Bankr. D. Del. July 30, 1999). Thus, these cases do not support Tutor Perini's assertion that an entity that was never party to a lease agreement and which has no contractual rights of its own under that lease may assert a cure claim based on the assumption of that lease.

**C. Potential Third-Party Beneficiary Rights Under an Assumed Contract**

In the alternative, Tutor Perini argues that it does have contractual rights in the Ground Lease sufficient to pursue a cure claim, either by virtue of "Debtor's delegation to and Tutor Perini's assumption of [certain] Ground Lease obligations," or by being "a third-party beneficiary." Appellant's Br. at 30, 34. We reject both claims.

First, although Tutor Perini asserts rights by virtue of being an assumptor, assignee, and delegatee, it never raised these arguments below in either the bankruptcy court or the district court. Accordingly, these arguments are waived. *In re Johns-Manville Corp.*, 759 F.3d 206, 219 (2d Cir. 2014).

Second, as to Tutor Perini's remaining claim that it has the status of a third-party beneficiary, it is worth noting, as an initial matter, that no party contests whether third-party beneficiary status is a sufficient contractual right to pursue a cure claim under § 365(b). Regardless of whether third-party beneficiaries have a

right to assert a cure claim,[6] Tutor Perini's claim fails because it is not a third-party beneficiary.

Whether Tutor Perini may sue as a "third-party beneficiary" of the Ground Lease is a matter controlled by "relevant state law." *Silverman v. Teamsters Loc. 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 286 (2d Cir. 2014). The Ground Lease states that it is governed by New York law. New York contract law distinguishes between an intended third-party beneficiary who "may sue . . . on a contract made for its benefit," and "an incidental beneficiary with no right to enforce [a] particular contract[]." *Dormitory Auth. of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710 (2018) (internal quotation and alteration marks omitted). In particular, New York law recognizes that "construction contracts . . . generally require[] express contractual language stating that the contracting parties intended to benefit a third party" in order for that third party to sue. *Id.*; *see also India.Com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005) (clause "entitled 'No Third Party Beneficiaries,' clearly

---

[6] Although we do not need to resolve in this case whether third-party beneficiaries of a contract assumed under § 365(a) can seek priority under § 365(b), there are sound reasons to think that Congress would have wanted third-party beneficiaries to be able to assert cure claims. After all, a third-party beneficiary is one who has a "right to performance" under a contract because "the intention of the parties" to that contract was to afford the third party such a right. Restatement (Second) of Contracts § 302 (1981). Thus, protecting the non-debtor contracting party's bargain reasonably includes allowing the intended third-party beneficiary to be made whole as well.

provided" that contract was not "intended to create any right, claim or remedy in favor of any person or entity other than the parties hereto" and "foreclosed the [third-party beneficiary] theory of recovery on which Dalal and the District Court relied" (some internal quotation marks omitted)). Further, as New York courts have held, "in instances where the contract in issue makes clear that a third party will be retained to assist in the performance by the promisee[,] . . . such third parties are not intended beneficiaries of the main contract." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 125 (2d Cir. 2005) (rejecting third-party beneficiary status) (quoting *Artwear, Inc. v. Hughes*, 202 A.D.2d 76, 83 (1st Dep't 1994)).

Tutor Perini argues that it is an intended third-party beneficiary because the Ground Lease's Section 5.7(c) states that Debtor was obligated to make payments to the redevelopment project's various contractors, subcontractors, and other parties hired by Debtor. However, we think the district court correctly read this portion of the Ground Lease—in which Debtor agreed to "pay all claims lawfully made against it by its contractors," App'x at 97—as "simply allocat[ing] payment responsibilities to [Debtor] rather than the Port Authority" and not as Debtor's promise to perform obligations for the benefit of Tutor Perini or any other

24

contractor. *In re GWB*, 2021 WL 3403590, at *4. The rest of Section 5.7(c) confirms that this promise to pay was meant for Port Authority's benefit, and not for any as-yet unhired contractors, as it states that "the Port Authority shall have no obligations or liabilities in connection with the performance of any Construction Work or the contracts for the performance thereof entered into by [Debtor]," App'x at 97. *See Subaru Distributors Corp.*, 425 F.3d at 126 (holding that a contract's requiring a party "to appoint sub-distributors does not, as a matter of law, make the sub-distributors intended beneficiaries"). Moreover, the Ground Lease specifically names certain "third-party beneficiaries of this Agreement," App'x at 173, but nowhere does it name Tutor Perini or otherwise indicate that Tutor Perini was intended to be among them. This tells us that the "parties to [the] contract . . . intended the omission" of other third-party beneficiaries. *Quadrant Structured Prods. Co. v. Vertin*, 23 N.Y.3d 549, 560 (2014) (holding that textual omissions in a "no-action clause" placed limits on the situations in which certain parties could and could not bring suit to enforce a contract); *see also India.Com*, 412 F.3d at 321 (holding that appellee was not a third-party beneficiary entitled to sue where a contract stated that a section was not "intended to create any right, claim or remedy in favor of any person or entity other than" specific, listed parties). Thus,

Tutor Perini is not a third-party beneficiary of the Ground Lease.

## IV. CONCLUSION

Tutor Perini's expansive view of the priority rights conferred by 11 U.S.C. § 365(b)(1)(A) is inconsistent with applicable principles of Bankruptcy Code interpretation, and its third-party beneficiary argument is inconsistent with controlling principles of New York contract law. Thus, for the foregoing reasons, we AFFIRM the district court's judgment.